RICHARD BUCKLEY *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued February 8—decision released May 15, 1979

*Hubert J. Santos,* special public defender, with whom, on the brief, was *F. Mac Buckley,* for the appellant (plaintiff).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (defendant).

LONGO, J. The plaintiff pleaded guilty to an information charging him with the crime of manslaughter in the first degree in violation of § 53a-55 (a) (1) of the General Statutes. He filed a writ of habeas corpus pro se challenging his confinement upon the sentence imposed. Upon the appointment of counsel to represent the plaintiff, a hearing was held on the allegations of an amended writ of habeas corpus which was dismissed. The court granted the plaintiff's request for an appeal to this court.

The trial court found the following facts pertinent to this appeal: Upon the plaintiff's indictment for murder, the public defender's office of the Superior Court assigned Attorney Herbert J. Bundock as public defender to represent the plaintiff. On January 2, 1975, in response to the plaintiff's letter complaining of Attorney Bundock's appointment, the presiding judge, *Stapleton, J.,* appointed public defender Clement F. Naples to represent the plain-

tiff. The trial commenced on January 15, 1975, and at jury selection, Attorney Bundock joined Attorney Naples as defense counsel and without any objection continued to represent the plaintiff. Thereafter, on January 22, after a partial trial, the plaintiff pleaded guilty to the lesser offense of manslaughter in the first degree. The plaintiff's plea came about as a result of plea bargaining negotiated by Attorney Bundock and the state's attorney.

In accordance with established procedure, the court, prior to sentencing, questioned the plaintiff, inter alia, as to his relationship with Attorney Bundock; whether he was satisfied with Attorney Bundock's advice; whether he was aware of the consequences of his guilty plea, and whether he knew the state's attorney intended to recommend a sentence of seven to fourteen years. To all questions, the plaintiff answered in the affirmative. On the day of sentencing, the plaintiff was asked if he had anything to say and he replied: "[T]he only thing I can say is that I'm sorry the whole thing happened."[1]

---

[1] At the time the plaintiff entered his plea of guilty on January 22, 1975, the court thoroughly questioned him as to whether he had consulted with his attorney, Attorney Bundock, whether he had discussed with him his plea of guilty, whether he was satisfied with Attorney Bundock's advice and assistance, whether he was entering his plea of guilty with Attorney Bundock's advice and assistance, whether he understood that he was pleading guilty to manslaughter in the first degree, whether he, in fact, committed that crime, whether he had been advised of the maximum possible penalty, whether he understood the court would not be bound by any recommended sentence, whether he was entering the plea voluntarily and of his own free will because he was guilty and for no other reason, whether he realized he was waiving his right to a continuance of his trial and to confront and cross-examine any witnesses who might be presented against him, and whether he knew the state's attorney intended to recommend a sentence of seven to fourteen years and that the chances were he would receive that sentence. To all of these inquiries the plaintiff answered affirmatively.

In denying the plaintiff's petition for habeas corpus, the trial court concluded (1) that the plaintiff's guilty plea was entered voluntarily, knowingly, intelligently, with full awareness of the likely consequences and with adequate assistance of counsel, and (2) that the plaintiff was not denied the effective assistance of counsel by the fact that he was represented by counsel who had been previously relieved by the court.

This appeal presents a single issue: whether, in the plaintiff's collateral attack via habeas corpus on the judgment of conviction, the trial court erred in rejecting the plaintiff's claim that a per se and presumptive denial of the right to effective assistance of counsel resulted from defense counsel's asserted lack of authority on account of his failure to file an appearance with the trial court.[2]

The plaintiff argues, somewhat disingenuously, that because Attorney Bundock did not file an

---

[2] The plaintiff argues that the trial court erred in failing to find as a fact the following paragraph of the plaintiff's draft finding: "At no time during jury selection, trial, the plea of guilty or sentencing, did Attorney Bundock seek nor was he granted permission to reappear and defend [the plaintiff]."

It is not clear from the record, however, whether Attorney Bundock disappeared from the case and, if so, whether he was reappointed. We note also that the record fails to disclose, and neither do the parties argue, that either the state's attorney or Attorney Naples filed an appearance. It is clear that Attorney Bundock consulted with the plaintiff thereafter and interviewed witnesses on his behalf. At the time of the trial and during the course thereof, both Attorney Bundock and Attorney Naples were present without objection voiced to the court by the plaintiff and Attorney Bundock negotiated with the state's attorney's office with respect to the plea of guilty to the reduced charge of manslaughter in the first degree which the plaintiff entered during the course of the trial on January 22, 1975.

In the view we take of this case, the addition of this paragraph would avail the plaintiff nothing; its addition to the finding is thus not warranted.

appearance upon commencing his defense of the plaintiff, Bundock was without authority to represent the plaintiff, and, without such authority, his assistance was per se ineffective. This claim is without merit.

Despite the plaintiff's protestations to the contrary, we do not view the argument above as involving a serious attack on the validity of the plaintiff's plea of guilty. "The guilty plea is a waiver of constitutional rights — a waiver of nonjurisdictional defenses — and where . . . the record discloses that such an act was voluntary, knowing, intelligent and done with sufficient awareness of the relevant circumstances and likely consequences, . . . the plaintiff's plea of guilty was valid." *Consiglio* v. *Warden,* 160 Conn. 151, 166, 276 A.2d 773 (1970). See also *Williams* v. *Reincke,* 157 Conn. 143, 148, 249 A.2d 252 (1968). There is nothing in the record which impeaches the plea here made or which suggests that the admissions of the plaintiff in open court were anything but the truth. The focus of a habeas inquiry where there has been a guilty plea is the nature of the advice of counsel and the voluntariness of the plea, not the existence of a purported antecedent constitutional infirmity. *Tollett* v. *Henderson,* 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973). If a prisoner pleads guilty on advice of counsel, he must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases. *McMann* v. *Richardson,* 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). Moreover, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not there-

after raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [v. *Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763]." *Tollett* v. *Henderson,* supra, 267. The range of competence set forth in *McMann* requires not errorless counsel, and not counsel judged ineffective by hindsight, but "counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." *State* v. *Barber,* 173 Conn. 153, 155, 376 A.2d 1108 (1977); *State* v. *McClain,* 171 Conn. 293, 301, 370 A.2d 928 (1976). The plaintiff must, moreover, demonstrate that there was such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. *Dukes* v. *Warden,* 161 Conn. 337, 344, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45, reh. denied, 407 U.S. 934, 92 S. Ct. 2464, 32 L. Ed. 2d 817 (1972).

The plaintiff has failed to make the showing outlined above. Nothing in the record before us would indicate that Attorney Bundock's failure to file an appearance in any way rendered his representation of the plaintiff ineffective, or that Attorney Bundock's representation in any conceivable way vitiated the voluntariness and intelligence of the plaintiff's plea. The record, moreover, affirmatively reveals that the plaintiff's plea was knowingly and intelligently made consistent with the decisions of this court; see, e.g., *Blue* v. *Robinson,* 173 Conn.

360, 379, 377 A.2d 1108 (1977) *(Speziale, J.,* concurring in part and dissenting in part); and with constitutional principles. See *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The record reveals that Bundock's representation of the plaintiff was within the range of "reasonably competent" criminal representation.[3] Nor is there any reason to believe that the failure of the plaintiff to indicate to the court his dissatisfaction with counsel at any stage of the proceeding from jury selection to the time of sentencing was anything but evidence of his realization that his counsel was acting competently and in his best interest and that a plea of guilty to a reduced charge was the best course to follow.

We find no error in the dismissal by the trial court of the plaintiff's writ.

There is no error.

In this opinion the other judges concurred.

---

[3] Had the plaintiff at any time during his trial, plea or sentencing proceedings complained to the court concerning Attorney Bundock's appearance and representation, his objection would have been timely and the court could have taken appropriate action.

In any event, we cannot agree with the plaintiff's claim that the appointment of Attorney Naples to represent him after his letter of protestation to the court represented a judicial determination that Attorney Bundock could not or would not be able to represent him effectively and that Attorney Bundock's participation in Buckley's defense thereafter was a per se denial of effective assistance.