Billy OSBORNE, Petitioner-Appellee,

v.

Vinson F. THOMPSON, Warden, Respondent-Appellant.

No. 79–1310.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1979.

Decided Dec. 20, 1979.

William M. Leech, Jr., Atty. Gen. of Tenn., William P. Sizer, III, Asst. Atty. Gen., Nashville, Tenn., for respondent-appellant.

William H. Farmer, Federal Public Defender, Robert L. Tucker, Asst. Federal Public Defender, Nashville, Tenn., for petitioner-appellee.

Billy Osborne, pro se.

Before MERRITT and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

The State of Tennessee appeals the judgment of the District Court granting Osborne's petition for a writ of habeas corpus.

---

10. *Ibid.*

The District Judge, Thomas A. Wiseman, found that the Tennessee trial court had not made an adequate due process determination of petitioner's competency to stand trial.

On March 19, 1975, Osborne pleaded guilty in Knox County, Tennessee, Criminal Court to each of five separate indictments, charging first degree burglary, second degree burglary, third degree burglary, attempt to commit a felony, and grand larceny. Prior to the plea, the trial court had granted petitioner's motion for a psychiatric examination to determine petitioner's competency to stand trial. On March 6, 1975, a written psychiatric report had been filed stating that petitioner was "marginally" competent to understand the charges brought against him, and to aid in his defense. The report had also disclosed that petitioner had a chronic mental illness and was being maintained on medication.

After petitioner pleaded guilty, the trial judge reserved imposition of judgment for four months. On May 22, 1975, before the four months expired, petitioner was returned to the Criminal Court. Based on his conduct, incoherence, obvious emotional instability and low intelligence, the state court declared him "mentally incompetent." The same trial judge who accepted the guilty pleas ordered him sent to Central State Hospital for further psychiatric examination. Two months later, Central State filed a report with the court stating that petitioner was "borderline" competent, suffering from mental retardation and would "need special assistance from his attorney."

On September 19, 1975, when petitioner next appeared before the court, he attempted to withdraw his guilty pleas. The court recessed, deliberated, and five days later reconvened to deny the motion and to enter judgment.

Other than the finding of incompetency made on May 22, 1975, the court made no explicit ruling on competency. The trial court did not conduct a hearing specifically on whether petitioner was competent to stand trial *at the time he pleaded guilty to the charges of the indictments.* The trial judge on initially accepting the guilty plea, asked primarily a litany of yes or no questions. When asked if anyone was putting pressure on him to force him to plead guilty, petitioner replied "Well, I don't know. . . . Me [sic] have just got a wife and baby I want to come back to." Based on remarks by the prosecutor, petitioner believed, justifiably, that his wife would be prosecuted if he did not enter into the plea bargain agreement. Petitioner's ability fully to understand the gravity of his and his wife's legal situation, therefore, was of utmost importance.

The District Court held, applying the due process clause, that at some point—either when it accepted the guilty plea or before it imposed judgment four months later—the court should have conducted a hearing regarding petitioner's competency to plead guilty on March 19, 1975. *See Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The District Judge reasoned that the initial psychiatric evaluation and the trial judge's finding that petitioner was incompetent on May 22, 1975, gave the trial court the "responsibility to delve further to determine the defendant's comprehension." He concluded that it was "impossible . . . to ascertain from the record whether or not petitioner was capable of entering a guilty plea."

The District Court further held that, four years later, it is now too late to determine retroactively petitioner's competence on March 19, 1975, and that the state must start prosecution anew.

We agree with the District Judge's clear, well-reasoned opinion and commend his diligence in getting to the bottom of a difficult case. Petitioner's conduct, the state trial judge's finding of incompetence on May 22, 1975, and the psychiatric reports, were sufficient to cast real doubt on whether petitioner was competent on March 19, 1975, the date on which the pleas were entered. Before he entered judgment, due process in such a case required the trial judge to have

conducted a hearing on whether petitioner was competent when he pleaded guilty, or alternatively to have allowed petitioner to withdraw his pleas.

The only evidence that petitioner was competent when he entered his guilty pleas is the first psychiatric evaluation. This report was incomplete. It did not detail the effects of petitioner's mental illness and the psychotropic drugs on his ability to aid in his defense. In addition the report characterized petitioner's competence as "marginal."

The State argues the relevancy of a subsequent psychiatric report that declared petitioner to be competent. These examinations occurred several months after the pleas and after the judicial declaration of incompetence. They did not report on his competence on March 19, 1975, and one said that several months later the examination disclosed a "borderline" mental situation. That report also lends support to the need for a due process hearing on competency.

Accordingly, the judgment of the District Court is affirmed.