LEROY S. MYERS *v.* JOHN R. MANSON, WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION (11133)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY, and GRILLO, Js.

---

Argued December 1, 1983—decision released March 6, 1984

*John R. Williams,* for the appellant (plaintiff).

*C. Robert Satti,* state's attorney, for the appellee (defendant).

PARSKEY, J. On December 2, 1980, the plaintiff pled guilty to possession of cocaine with intent to sell, in violation of General Statutes §§ 19-452 (now § 21a-245), 19-480 (a) (now § 21a-277 [a]) and 53a-8, and conspiracy to possess cocaine with intent to sell, in violation of General Statutes §§ 19-452, 19-480 and 53a-48 (a). He was sentenced by the Superior Court at New London, *Hendel, J.,* for an effective term of not less than four and one-half years nor more than twenty-five years[1] to be served at the Somers correctional institution.[2] On March 22, 1981, the plaintiff filed a habeas petition, which was denied by the Superior Court at Hartford, *Wright, J.* On appeal of this denial, the plaintiff asserts

[1] The plaintiff petitioned to the Sentence Review Division which ordered him resentenced. On September 30, 1983, his sentence was reduced to four and one-half years to no more than fifteen years. As a result, at oral argument the plaintiff's counsel withdrew his claim that the plaintiff was incompetent at the time of sentencing.

[2] The plaintiff was paroled in October, 1983, and released to Florida.

that he was mentally incompetent at the time of his guilty plea, that he was deprived of the effective assistance of counsel, and that his misunderstanding of the terms of his plea agreement require that the guilty plea be vacated. We find no error.

The following facts were found by the habeas court. The plaintiff, a Florida building contractor, and a codefendant, James Grotton,[3] agreed in Florida to sell thirty-three ounces of cocaine to undercover officers from Connecticut for $47,000. On October 21, 1979, the officers, Grotton, and the plaintiff flew to Connecticut with the cocaine to collect the money, whereupon Grotton and the plaintiff were arrested. Because of the large amount of cocaine, the grand jury indicted the parties under General Statutes §§ 19-452, 19-480a (a) (now § 21a-278) and 53a-48 (a) which required a mandatory minimum sentence of not less than five years nor more than twenty years and a maximum of life imprisonment. The plaintiff's counsel, Andrew Garson, arranged with assistant United States attorney Holly Fitzsimmons for the plaintiff to become an informer for the United States drug enforcement agency in return for her agreement not to prosecute him in federal court and to advise the state's attorney and the sentencing judge of his cooperation. The plaintiff's work as an informer enabled the U.S. attorney to indict eight defendants, seven of whom pled guilty. The plaintiff testified for the prosecution at the federal trial of the one defendant who did not plead guilty.

Because of the plaintiff's cooperation and his willingness to plead, the state's attorney entered into a plea bargain wherein he reduced the charges and recommended a sentence of not less than seven nor more than twenty-five years in return for a guilty plea. On December 2, 1980, the plaintiff changed his plea to guilty. Sen-

---

[3] Grotton also pled guilty and was sentenced to a term of four to twenty-five years.

tencing was scheduled for December 24, but was postponed until January 6, 1981, because of a suicide attempt by the plaintiff.

There was extensive testimony at the habeas hearing about the plaintiff's mental state at the time of the plea. From all of this testimony, much of it conflicting,[4] the court found the following: Between his arrest and sentencing, the plaintiff attempted suicide at least three times. The court and the state's attorney were notified of one attempt. Scott Grove, a Connecticut psychiatrist, examined the plaintiff, spoke with the plaintiff's wife, reviewed the records of the plaintiff's hospitalizations and the transcripts of the plea and sentencing hearings, and concluded that the plaintiff was suffering from a narcissistic personality disorder with major symptoms of depression, but that he was not psychotic. Hans Langhammer, a psychiatrist who examined the plaintiff for drug dependency in December, 1979, found the plaintiff to be very rational, and upon reading the transcripts of the court proceedings, the report of Grove, and the presentence report, concluded that the plaintiff was able to understand the nature of the proceedings and could cooperate with counsel. Assistant United States attorney Holly Fitzsimmons testified that the plaintiff had complete understanding of the federal trial in which he had testified. On the morning of his sentencing, the plaintiff had two to three drinks. From all of this evidence the court concluded that it was clear that the plaintiff "was under severe mental stress after his arrest" but that "[a]n examination of the transcripts of December 2, 1980 and January 6, 1981 shows that the inquiries by the court and the petitioner's responses

---

[4] On appeal the parties present conflicting versions and draw contrary inferences from the testimony. Since this court can not retry the facts or make determinations of credibility; *Kalleher* v. *Orr*, 183 Conn. 125, 128, 438 A.2d 843 (1981); we accept the findings as they appear in the memorandum of decision.

manifest a rational and intelligent understanding by the petitioner of all the events of those dates."

I

We first discuss the threshold issue of who, in the habeas action, bore the burden of proving competency at the time of the guilty plea. A habeas corpus petition often arises long after memories have faded and evidence has disappeared. This collateral attack of a conviction conflicts with the strong interest in the finality of judgments and the interest in orderly trial procedure. *Henderson* v. *Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1976). As a result, the plaintiff in a habeas corpus proceeding bears a heavy burden of proof. The plaintiff asserts that in this case the burden should have shifted to the state. The basis for this claim is that the trial court was informed of the plaintiff's suicide attempt between the plea and sentencing and hence should have conducted a hearing on the plaintiff's competency[5] or allowed him to withdraw his plea.[6] The plaintiff cites two federal cases for the proposition that the court's failure shifted the burden of proof to the state. We find these cases factually distinguishable.

---

[5] General Statutes § 54-56d (c) provides: "If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency."

Section 54-56d (d) provides, inter alia, that if the court orders an examination, a written report must be filed with the court, copies of which are delivered to the state's attorney and the defendant's counsel. Section 54-46d (e) provides in part that "[t]he court shall hold a hearing as to the competency of the defendant no later than ten days after it receives the written report." General Statutes § 54-56d was formerly § 54-40.

[6] At no point did the plaintiff move for a psychiatric examination to determine his competency. General Statutes § 54-56d (c). Nor did he move to withdraw his plea; Practice Book §§ 719–722; or to correct an illegal sentence. Practice Book § 935.

In *Osborne* v. *Thompson,* 610 F.2d 461 (6th Cir. 1979), the state trial court was confronted with a psychiatric report which disclosed that the petitioner "had a chronic mental illness" and concluded that he was "marginally" competent. The court accepted his guilty plea but reserved imposition of judgment for four months. Prior to the expiration of the four-month period, when the petitioner appeared before the court again, it found him "mentally incompetent" and ordered him to a state hospital which, two months later, reported him to be "borderline competent" and "suffering from mental retardation." Despite this, the court denied the petitioner's motion to withdraw his guilty plea and rendered judgment. In upholding the granting of the habeas petition, the United States Court of Appeals for the Sixth Circuit held that in the face of all this evidence, the state trial judge should have conducted a hearing, prior to the judgment, on the petitioner's competency to plead guilty or granted his motion to withdraw his plea. Id., 462–63. In *United States* v. *Hollis,* 569 F.2d 199, 207 (3d Cir. 1977), the court held that when a petitioner has raised the issue of incompetency prior to pleading guilty but is not afforded a hearing, then at the habeas hearing the burden shifts to the state. In creating this exception to the general burden of proof rule, the court noted that it was "a limited one confined to the facts of this case." Id., 207 n.14.

The evidence raising the issue of incompetence in *Osborne* and *Hollis* was formidable. In contrast, in the present case the only information the trial judge had pertaining to the plaintiff's mental state concerned the suicide attempt after the plea and before sentencing. Though we recognize the seriousness of such an act, we can not say that it required the trial judge to hold a hearing on the plaintiff's competence or that the burden of proof shifted to the state at the habeas hearing.

The plaintiff next avers that there is a stricter legal test for the determination of a defendant's competency to plead than for the determination of a defendant's competency to stand trial or be sentenced. He claims that the habeas court failed either to articulate or to apply to the facts of this case these differing tests and requests that this court remand for a finding in light of the appropriate standard or hold as a matter of law that the plaintiff was incompetent to plead. We decline to do either.

General Statutes § 54-56d (a),[7] which sets the standard for competency to stand trial, provides that "a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." This conforms to the standard enunciated in *Dusky* v. *United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Though there is no separate statute that sets the standard for competency to plead guilty or to be sentenced, our cases have held that a guilty plea " 'cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)"; *State* v. *Torres,* 182 Conn. 176, 184, 438 A.2d 46 (1980); *State* v. *Marra,* 174 Conn. 338, 340, 387 A.2d 550 (1978); that it must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant"; *State* v. *Battle,* 170 Conn. 469, 474–75, 365 A.2d 1100 (1976), quoting *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State* v. *Deboben,* 187 Conn. 469, 476, 446 A.2d 828 (1982); or that the record must disclose that "such an act was voluntary, knowing, intelligent and

---

[7] "[General Statutes] Sec. 54-56d. (Formerly Sec. 54-40). COMPETENCY TO STAND TRIAL. (a) COMPETENCY REQUIRED. DEFINITION. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense."

done with sufficient awareness of the relevant circumstances and likely consequences . . . ." *Consiglio* v. *Warden,* 160 Conn. 151, 166, 276 A.2d 773 (1970); *Buckley* v. *Warden,* 177 Conn. 538, 542, 418 A.2d 913 (1979).

Implicit in the scrutiny of the plea at the trial level and on appeal is an inquiry into whether the defendant was competent to plead. Indeed, if the defendant does not possess an understanding of the law in relation to the facts, can not choose among the alternatives, or does not have sufficient awareness of the relevant circumstances and likely consequences, then the defendant can not be competent to plead. Hence, the trial court's acceptance of the plea after a thorough inquiry; Practice Book §§ 711–713; *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); implies that the plaintiff was competent to enter that plea.

Upon review of that proceeding and other events, the habeas court held that the plaintiff had "a rational and intelligent understanding . . . of all the events of those dates." The plaintiff asserts that the analysis for judging his competency should have been whether "mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of the waiver." *Chavez* v. *United States,* 641 F.2d 1253, 1259 (9th Cir. 1981). *Chavez,* which is based on *Seiling* v. *Eyman,* 478 F.2d 211 (9th Cir. 1973), held that the test for competency depends on the decisions and consequences involved. Thus, because a plea of guilty effects a waiver of certain constitutional rights, the aforementioned standard is more stringent than the *Dusky* test for competency to stand trial and the test for competency to be sentenced, which *Chavez* states as "whether the defendant is able to understand

the nature of the proceedings and participate intelligently to the extent participation is called for." *Chavez* v. *United States,* supra, 1259.

The plaintiff's reliance on *Seiling-Chavez* is unhelpful for a number of reasons. Firstly, *Seiling* has been rejected by almost every other court in favor of a unitary standard of competency.[8] Secondly, we fail to see how the *Seiling-Chavez* test of competency to plead guilty differs practically from our scrutiny of the voluntariness and intelligence of the plea. Indeed the *Seiling-Chavez* test and our cases use many of the same key words. Though the court below may not have used those precise words in its finding, we will not elevate form over substance and remand for such tinkering. Thirdly, applying any standard, the result is the same. The court held eight days of hearings, at which it heard testimony from friends of the plaintiff, his wife, his defense attorney, the United States attorney, two experts and the plaintiff himself, examined the transcripts of the plea and the sentencing, and concluded that the plaintiff had been competent. Upon review of the transcripts of these hearings and of the canvass, we can not say this conclusion was clearly erroneous.

---

[8] *Seiling* v. *Eyman,* 478 F.2d 211 (9th Cir. 1973), has been followed by the United States Court of Appeals for the D.C. Circuit; *United States* v. *Masthers,* 539 F.2d 721 (D.C. Cir. 1976); and California; *People* v. *Hazelaar,* 125 Cal. App. 3d 1017, 178 Cal. Rptr. 491 (1981); and rejected or criticized by other courts which have considered it. E.g., *United States ex rel. Heral* v. *Frazen,* 667 F.2d 633 (7th Cir. 1981); *Allard* v. *Helgemoe,* 572 F.2d 1 (1st Cir.), cert. denied, 439 U.S. 858, 99 S. Ct. 175, 58 L. Ed. 2d 166 (1978); *Suggs* v. *LaVallee,* 570 F.2d 1092 (2d Cir. 1978); *United States ex rel. McGough* v. *Hewitt,* 528 F.2d 339 (3d Cir. 1975); *United States* v. *Harlan,* 480 F.2d 515 (6th Cir.), cert. denied, 414 U.S. 1006, 94 S. Ct. 364, 38 L. Ed. 2d 242 (1973); *State* v. *Contreras,* 112 Ariz. 358, 542 P.2d 17 (1975); *People* v. *Heral,* 62 Ill. 2d 329, 342 N.E.2d 34 (1976); *Ciummei* v. *Commonwealth,* 378 Mass. 504, 392 N.E.2d 1186 (1979); see generally Comment, "Competence to Plead Guilty: A New Standard," 1974 Duke L.J. 149 (1974).

## II

The plaintiff claims that the trial court erred in holding that the plaintiff was not deprived of the effective assistance of counsel. He asserts that we should either remand to the trial court because its holding was based on the proposition that a person with privately retained counsel can not claim a sixth amendment violation, or find as a matter of law that the plaintiff was denied the effective assistance of counsel when he pled guilty. Once again, we decline to do either.

The plaintiff's first argument is easily eliminated. In its discussion of a sixth amendment claim the trial court stated, "when a defendant selects his own counsel, that counsel truly represents defendant; and no mistake or error of his, made in good faith and with earnest and honest purpose to serve his client, can be made [the] basis of [a] claim of reversible error. Also see, *Buckley* v. *Warden,* [177] Conn. 538 [418 A.2d 913] (1979)."

It is possible to infer from this statement that there is a more stringent standard of competency for privately retained counsel than for appointed counsel. This is plainly incorrect. *Cuyler* v. *Sullivan,* 446 U.S. 335, 344, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *State* v. *Mason,* 186 Conn. 574, 577, 442 A.2d 1335 (1982). If the trial court had imposed a more stringent standard, we would find error. A complete reading of the memorandum of decision, however, demonstrates that the trial court did not dispose of the claim in that way; rather, it addressed the merits under the proper standard and found that the plaintiff was not denied the effective assistance of counsel. It remains to be considered whether the trial court was correct.

The plaintiff's voluminous allegations of ineffectiveness in the statement of facts boil down to the claims that his counsel, Andrew Garson, was ineffective

because (1) he allegedly knew that the plaintiff was mentally incompetent and did not want to plead guilty but he did not report this to the court; (2) the advice to plead guilty was allegedly based on an incomplete factual investigation by Garson; and (3) Garson allegedly induced the plaintiff to plead guilty by misrepresenting the consequences if he did not. The first allegation represents an attempt by the plaintiff to raise independent claims of constitutional violations that occurred prior to the guilty plea. This he can not do. Once a criminal defendant has entered a guilty plea or an Alford plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [within the range of competence demanded of attorneys in criminal cases]." *Tollett* v. *Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *Buckley* v. *Warden,* supra, 542–43. Hence our focus is on the plaintiff's second and third allegations.

In order to prevail on these claims the plaintiff must prove two things: that his counsel's assistance was ineffective in that it was not "within the range of competence displayed by lawyers with ordinary training and skill in the criminal law"; *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975); and that "there was such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. *Dukes* v. *Warden,* 161 Conn. 337, 344, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32

L. Ed. 2d 45, reh. denied, 407 U.S. 934, 92 S. Ct. 2464, 32 L. Ed. 2d 817 (1972)." *Buckley* v. *Warden,* supra, 543.

In considering the claim of ineffective assistance, we must examine the total picture. The plaintiff, who was not a drug addict, sold a substantial amount of cocaine to an undercover officer. As a result he was indicted on drug charges that carried a mandatory minimum sentence of five to twenty years and a maximum of life imprisonment. General Statutes § 19-480a (now § 21a-278). He was confronted with a state's attorney who was initially adamant about not reducing the charges or recommending a lesser sentence. When he entered his plea, he admitted to the trial court that if he were tried on the indicted charges he believed he could be convicted.[9] Thus the plaintiff faced the strong probability of conviction and the strong possibility that in the event of conviction the state's attorney would recommend a sentence substantially longer than the minimum. The record is replete with evidence that the plaintiff did not want a lengthy incarceration. On advice of counsel, the plaintiff cooperated with federal authorities and, as a result, was not prosecuted in federal court. In addition, the U.S. attorney and Garson met with the state's attorney and eventually convinced him to reduce the charges and recommend a lesser sentence in return for a guilty plea. Ultimately the plaintiff served two and one-half years, substantially less than what he would have served had he been tried and convicted.

---

[9] "The Court: Now, do I understand you to believe that if this case were tried before a Jury or before a Judge, possibly a three Judge Court, if the original charges were reimposed, since they involve life imprisonment, that you could be convicted at that trial?

"Mr. Myers: That's what I believe.

"The Court: You believe you could be convicted. Is that correct?

"Mr. Myers: Yes."

The plaintiff's second allegation is that the advice to plead guilty was based on an insufficient factual investigation by counsel. In essence, the plaintiff claims that the failure of counsel to pursue discovery resulted in an incomplete factual picture that created in the plaintiff's mind a misperception of his alternatives and thus, the guilty plea can not be considered voluntary.

The plaintiff has failed to raise this claim above the level of allegation. He has simply alleged a failure to investigate and hence, ineffective assistance. At the very least, the plaintiff must show that had counsel investigated he would have discovered some information that could have affected the plaintiff's perception of his alternatives. This he has not done. He merely cites to *Mason* v. *Balcom,* 531 F.2d 717 (5th Cir. 1976), which is inapposite.

In *Mason,* the petitioner's attorney, whose representation had been found ineffective twice before, met with his client for the first time on the day of the plea. He did not inform the petitioner of the grand jury process available to defendants who plead not guilty. He did not investigate potential defenses such as duress, coercion or intoxication, or challenge the voluntariness of his confession, about which there was some doubt. Nor did he attempt to plea bargain or present character witnesses or request a lenient sentence. In short, "Watts did not actually and substantially assist his client in deciding whether to plead guilty, did not familiarize himself with the facts of the case, and did not impart to his client an understanding of the law in relation to the facts. The assembly-line nature of the representation given petitioner Mason by attorney Watts does not approach the level of effectiveness demanded by our cases." Id., 725.

This is not the situation in the case before us. Garson testified that he had substantial information includ-

ing the grand jury minutes, upon which to base his advice. He had filed pretrial discovery motions that he did not pursue during the plea negotiations, but by agreement with the state's attorney, could have pressed those motions in the event of trial. He engaged in extensive plea bargaining which ultimately resulted in a lesser sentence. In the face of the plaintiff's failure to present any missing facts or relevant information to the contrary, we can not say that counsel's factual investigation was inadequate.

We next consider the plaintiff's third allegation that the plea was induced by counsel's misrepresentation of the consequences if he did not plead guilty. It is true that Garson testified at the habeas hearing that he had told the plaintiff that if he went to trial there was a possibility that the state's attorney would attempt to revoke bond to preclude the plaintiff from fleeing the state and thus the plaintiff could be incarcerated during trial. Garson testified that he had "seen that happen in New York"[10] but admitted that he had not seen it happen in Connecticut. Though this statement was inaccurate and regrettable we can not say that it rendered Garson's otherwise effective assistance ineffective.

Even if the plaintiff did prove that this inaccurate statement constitutes ineffective assistance of counsel, he must still prove that the ineffectiveness vitiated the voluntariness of his guilty plea. *Buckley* v. *Warden,* 177 Conn. 538, 543, 418 A.2d 913 (1979). In other words, the plaintiff must prove that this misstatement was a significant factor that triggered his guilty plea. *Ford* v. *Parratt,* 638 F.2d 1115 (8th Cir. 1981). This he has failed to do.

---

[10] Prior to coming to Connecticut, Garson had been an assistant district attorney in New York for four and one-half years.

When the plaintiff pled guilty he stated that the reason he was pleading guilty was for a more lenient sentence:

"The Court: Therefore, you're pleading guilty under the Alford Doctrine because you feel you will be more leniently treated if you plead guilty under the Alford Doctrine, is that correct, than if you go forward with the trial and are convicted after trial?

"Mr. Myers: Yes.

"The Court: And also that you're pleading guilty to a charge which has no mandatory minimum and no maximum of life, it is a much lesser penalty. Is that correct?

"Mr. Myers: That's correct."

Nowhere did he suggest, as he does now, that he was also pleading guilty because he wanted to avoid the possibility of temporary incarceration during trial.[11]

In addition to the habeas court's finding that Garson's performance was effective, there was no finding that the inaccurate statement induced the plaintiff's plea. The plaintiff did not request the court to articulate the basis of its finding. Practice Book § 3060B. As such we are presented with a finding of effectiveness and a record that reveals that the plaintiff's plea was induced by his desire to avoid a sentence of at least five

[11] The canvass reveals that, when the plaintiff entered his plea, the court thoroughly explored, inter alia, that the plaintiff was entering the plea voluntarily and of his own free will; that he was pleading guilty under the Alford doctrine because he believed if he were tried he might be convicted and thus face a more severe punishment than if he pled guilty to a lesser charge; that no threats had been made to induce him to so plead; that he was promised nothing other than a sentence recommendation in exchange for his plea; that he was aware of and apprised of the negotiations between his attorney and the state's attorney; that he was waiving his right to a trial to confront his accusers and to the privilege against self-incrimination, and that he claimed no violation of his civil or constitutional rights; that he had fully discussed the charges and the plea with his attorney and was satisfied with his attorney's advice and assistance; and that he understood the charges to which he was pleading.

years. The plaintiff has failed to show that the misrepresentation was a substantial factor that triggered his guilty plea.

The plaintiff has cited numerous federal cases, claiming that they are dispositive of this case. In light of the discussion above, we find them factually and analytically distinguishable.

### III

The plaintiff's last claim is that he misunderstood the terms of the plea agreement and hence his plea should be vacated. He contends that he understood that if he were incarcerated at all it would be in a "country club" federal prison at an Air Force base in Florida.

The plaintiff's present version of the plea bargain does not conform with his representation of the bargain to the trial court. When he entered his plea the following colloquy took place:

"The Court: Were you promised anything other than a recommendation as to sentence at the time of the sentencing in order to secure these pleas, Mr. Myers?

"Mr. Myers: Yes, sir.

"The Court: Were you promised anything other than a recommendation as to sentence —

"Mr. Myers: No."

Certainly, if his understanding were otherwise he would have so stated to the court. See *State* v. *Collins,* 176 Conn. 7, 8, 404 A.2d 871 (1978).

There is no error.[12]

In this opinion the other judges concurred.

---

[12] In his brief the defendant claims that the plaintiff deliberately bypassed the orderly procedure of direct appeal. The habeas court found that he had not. Since the defendant has not filed a cross appeal, this claim is not properly before us; Practice Book §§ 3003, 3012 (a); and therefore we are not called upon to consider whether the trial court's conclusion was correct.