[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner is a 42 year old married male who pleaded guilty under the doctrine of North Carolina v. Alford[1] to Manslaughter in the First Degree, Sale of Narcotics and Carrying a Pistol Without a Permit.[2] He was represented by Attorney John Robert Gulash on a charge of murder which was eventually reduced to Manslaughter. He was represented by Attorney David Malloy, a public defender, on the other charges. Inasmuch as the murder charge was the most serious, Malloy permitted Gulash to act as lead counsel in pre-trial discussions. According to Gulash, there were at least ten pre-trial conferences with the state's attorney and the judge.
When Gulash met Angel Baez, he noticed that Baez was visibly nervous. He saw Baez's hands trembling. According to Attorney Gulash these symptoms diminished, most noticeably after the petitioner was released on bond from the Bridgeport jail.
Besides facts relating to the offense itself, Baez told his attorney that he had been treated for drug addiction at VA hospitals in Albany and Brooklyn, New York as well as Fairfield Hills Hospital and the Methodone Program in Bridgeport. Baez also related that he suffered from a nervous condition. The petitioner told Gulash that the onset of the symptoms occurred after he served several months in Vietnam as a member of the Marine Corps.
At the time Mr. Gulash was retained to represent Baez on the charge of murder, his prior narcotics arrest had been pending for about one year. The petitioner was arrested on the weapons offense after the arrest for murder. After the alleged murder occurred, Baez fled Connecticut and went to Oklahoma. He was later arrested and returned to Connecticut when he waived extradition.
The three charges were negotiated. The petitioner was sentenced to twenty (20) years on the Manslaughter charge, five CT Page 6920 (5) years consecutive on one count of sale of narcotics and seven (7) years concurrent on the weapons violation so that Baez received a total effective sentence of twenty-five (25) years to serve.
Some time after his entry into the corrections system as a convicted prisoner, the petitioner was transferred to a New Hampshire prison. It was there that he was introduced to other Vietnam veterans who had been convicted of crimes. Apparently, the New Hampshire facility provided group therapy sessions designed specifically for Vietnam veterans. Mr. Baez determined that he shared a symptomology with other convicts. He acquired information, including printed materials from a group known as Vietnam Veterans of America. Baez learned that he suffered from an illness known as Post Traumatic Stress Disorder (hereinafter P.T.S.D.) and that some individuals suffering from it had successfully defended criminal charges based upon their illness.
The petitioner wrote to Gulash for the first time on June 28, 1987. He enclosed copies of the materials he had received from the Vietnam Veterans of America. He followed up that particular correspondence on September 26, 1988 with a lengthy letter. In that letter he lauded Gulash's efforts on his behalf, acknowledging his attorney's efforts to instruct the sentencing court about his psychological problems. He referred to the knowledge about P.T.S.D. that he had acquired since the date of his sentencing and requested Gulash's help with filing a petition for habeas corpus.
Angel Baez filed a pro se petition on December 2, 1988. Eventually a public defender was appointed to represent him. In the amended petition, dated January 30, 1990, the petitioner alleged that at the time of his pleas of guilty he was suffering the effects of Post Traumatic Stress Disorder and was "not competent to enter knowing, intelligent and voluntary pleas of guilty." He also claimed that Mr. Gulash rendered ineffective assistance of counsel because he failed "to discover, evaluate, investigate and present the history, severity and impact of petitioner's condition during plea negotiations and/or in the sentencing proceeding."
The state has conceded that Baez has not deliberately bypassed the orderly process of direct appeal. In addition, the court recognizes that the question of deliberate bypass is satisfied when a petitioner raises a claim of ineffective assistance of counsel, because such a claim must raised and decided through collateral review such as habeas corpus. State v. Leecan, 198 Conn. 517 (1986); See also Tyson v. Warden,24 Conn. App. 729, 733 (1991). CT Page 6921
We turn first to Baez's contention that he was not legally competent to enter his pleas of guilty. Section 54-56d(a) of our Statutes defines "competency" as follows: "A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense." In the presentation of his case in chief to the habeas trial court, the petitioner presented Dr. Linda Reinberg, Ph.D., an expert in P.T.S.D. Dr. Reinberg had examined Mr. Baez, some of his medical records including VA and Department of Corrections records, court records, and a competency evaluation report performed on Mr. Baez in 1984. Based upon her examination of the petitioner and those records, she concluded that he first exhibited P.T.S.D. in 1982 and he suffered from P.T.S.D. in 1985. She did conclude, however, that the petitioner was able to understand the court proceedings in 1985 and that he was "able to assist in his own defense intellectually, but psychologically he was unable to [do so]." In 1984, the court's diagnostic team rendered a unanimous opinion that "Angel Baez is currently competent to stand trial in that he is aware of courtroom proceedings and can assist in his own defense, without qualifications, . . ."
On May 29, 1985, the Hon. William Lavery conducted an exhaustive plea canvas hearing during which Baez exhibited no indication of an inability to comprehend or assist. Neither did he exhibit any signs of incompetency during the sentencing hearing before Judge Landau on July 12, 1985.
In 1988, Baez wrote, in part, the following the Attorney Gulash:
 My need now, however, is to appeal to you for what ever assistance you feel you can provide. You were at my side during my pre-sentence hearing. You brought to the court's attention the possibility of a connection between my criminal behavior and my Vietnam experience. You included, in your addressing of the court, a request for psychological help as a condition of confinement. You heard the court refer to my PSI and a medical diagnosis from a psychiatrist that conveyed the information that I was suffering, "from a condition known as Vietnam Syndrome." I was, at the time, not consciously aware of the depth of my psychological problems that were and are directly connected to my serving my country, HONORABLY, as a member of the U.S.M.C. and actively taking part in combat in Vietnam.
I had, at the time of my sentencing hearing, no way of CT Page 6922 conveying to you or the court, what I was experiencing psychologically as we proceeded through the hearing to change my plea. In retrospect I know I was a total psychological mess. I did not know that Post Traumatic Stress Disorder, (PTSD) had affected my ability to evaluate my legal situation and provide you with competent advice and input into my legal defense. I know I was not really in touch with reality and had no capacity to identify my mental problems, at that time.
 You surely provided me adequate legal assistance, given your knowledge of the psychological implications connected to P.T.S.D. at the time. Add to that the fact that you had no way of knowing what my mental state was during the course of the hearing and we have a really serious situation as far as my being able to make a competent and informed contribution to my own defense. I am in no way, what so ever, trying to imply that you did not provide competent legal assistance at the time, based on what you were actually aware of. I, in fact, did not know, at the time, that I was unable to communicate with you and the court in a competent manner. I was not aware of the immobilizing and inhibiting psychological affects [sic] P.T.S.D. had on my ability to communicate my thoughts to you and court on how I was actually feeling and thinking at the time. You surely couldn't read my mind and I couldn't convey my problem because I was not even aware of the psychological damage I had suffered as a result of P.T.S.D. I do know that I did not adequately and competently assist you at my pre-sentence hearing. I am now seeking to petition the court to allow me to withdraw my guilty plea, entered under the Alford doctrine, and give to [sic] the chance to defend myself. I plead [sic] guilty while suffering from impaired and faulty judgment due to my mentally distorted perspective on what was actually taken [sic] place. Now that I have sufficient insight into the nature of the problems P.T.S.D. has caused me I would like to have my day in court. To achieve that end I have to withdraw my plea of guilty under the Alford doctrine.
 I am sure that had I been able to share with you my mental state of mind at the time of my sentencing hearing you would of [sic] proceeded differently. You would of [sic] recognized the fact that I was not in full control of my mental faculties and I was not entering into a sentencing agreement with full and CT Page 6923 conscious consent due to my psychological problems which are a direct result of P.T.S.D. . . .
The petitioner in a habeas corpus case bears the burden or proving his allegations. Myers v. Manson, 192 Conn. 383, 387
(1984); Arey v. Warden, 187 Conn. 324, 331 (1982). Mr. Baez has failed to meet that burden with respect to his claim of incompetency. If the petitioner was "intellectually" able to assist counsel, he was competent in accordance with our law. See Myers v. Manson, 192 Conn. 383, 389-390 (1984); McCarthy v. United States;, 394 U.S. 459 (1966). His thoughts set forth in the September 26, 1988 epistle to Attorney Gulash, make apparent why he instituted a petition for habeas corpus. This court is fully satisfied that Angel Baez was competent before, during and after he entered "Alford" pleas of guilty to the charges.
The next question raised by the petitioner is whether or not Attorney Gulash was competent and effective as a lawyer. The Court's conclusion is that he was. Besides representing the petitioner exclusively on the charge of murder, Attorney Gulash acted as "lead counsel" during pre-trial negotiations with respect to all three files. Gulash interviewed the petitioner and his family shortly after he was retained. He learned about Baez's military history, his history of substance abuse and treatment, his treatment in VA hospitals in Albany and Brooklyn, New York and at Fairfield Hills and Bridgeport Mental Health. He was aware that his client had been examined for competency and found to be competent in 1984. He was aware that the family considered the petitioner a changed man after his return from Vietnam. Gulash noticed that Baez trembled during their first meeting, but he also noted that his client's apparent nervousness abated as time went on, especially after his release on bail from confinement. After Baez was reincarcerated, Gulash never noticed any emotional deterioration. Gulash testified that Baez always felt that his experience in Vietnam caused his problems. Gulash also testified that he did not order any of his client's medical records nor did he confer with anyone who was considered an expert in the field of P.T.S.D. Gulash stressed his client's emotional problems, his drug addiction and his military history during pre-trial negotiations, however. Mr. Gulash's representations respecting his client were never challenged by the Prosecution or the Court Gulash considered Baez's mental state useful for negotiation purposes only but not for an affirmative defense to murder. His client helped him investigate the case and locate witnesses. He met with the petitioner every time there was a pre-trial conference and at least once every two weeks at Gulash's office.
The petitioner was well represented by his lawyer. Attorney Gulash's tactical decision to employ his client's CT Page 6924 mental condition as a mitigating factor rather than as an affirmative defense was a reasonable one. P.T.S.D. or "Vietnam Syndrome" was first recognized as a mental condition in 1980.[3]
Baez originally faced a substantially lengthier sentence than the one he received. He was no stranger to the criminal justice system, having a record which commenced in 1973 and which included nine (9) convictions preceding the instant matters among which were convictions for Robbery 1, Robbery 3, Larceny 3, and two narcotics law violations.
The claim that Attorney Gulash failed to investigate adequately the P.T.S.D. history simply has not been proven.[4]
Attorney Gulash testified that the state did not contest his representations about his client's war record, drug abuse and mental condition. The evidence discloses that as a result of Gulash's utilization of the information in pre-trial discussions, he achieved the favorable result for his client.
 :[N]ot only [must] `[j]udicial scrutiny of counsel's performance . . . . be highly deferential; but also . . . the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."
Quintana v. Warden, 220 Conn. 1, 5 (1991).
The court finds that the petitioner has failed to prove either prong of Strickland.[5] Gulash's representation did not fall below an objective standard of reasonableness as measured against Connecticut attorneys practicing criminal law in 1985. Moreover, the petitioner has failed to convince this court that the result achieved would have been any more favorable had Mr. Gulash acquired the medical records, contacted an expert witness, or asserted an affirmative defense of mental disease or defect.
The petition for a writ of habeas corpus is denied.
BY THE COURT, Hon. Howard Scheinblum Superior Court Judge