[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 15, 2002, the petitioner filed a petition for a writ of habeas corpus, said petition being amended on October 15, 2002. The two-count amended petition alleges in count one that the petitioner's due process rights to the effective assistance of counsel were denied by the actions and omissions of trial counsel. More specifically, the petitioner alleges in count one that counsel was ineffective for not adequately advising the petitioner, failing to conduct a sufficient investigation and failing to ensure that the petitioner's plea was knowing, intelligent and voluntary.
The second count of the amended petition claims that the petitioner has "found that the evidence was insufficient to prove that he was guilty and that he was actually innocent" of the charged offense, as well as that the trial court failed to ensure that the petitioner's plea was knowing, intelligent and voluntary. Am. Pet. The respondent denies the petitioner's claims. For the reasons set forth more fully below, the petition shall be denied.
This matter came before this court for trial on February 3, 2003. The petitioner, former Correction Officer Todd Romagna, former Correction Officer Robert Perun, inmate Jacquin Santiago, Mark Suse and Attorney Paul Eschuk testified at the trial. Additionally, the court received into evidence numerous exhibits, including, but not limited to: transcripts, disciplinary reports and witness statements. This court has reviewed all of the testimony and evidence and makes the following findings of fact.
 FINDINGS OF FACT
1. The petitioner was in the custody of the Commissioner of Correction at the time he filed the present petition and has remained incarcerated.
2. The petitioner was the defendant in criminal docket CR95-92663 in CT Page 2578-ea the Geographic Area #3 at Danbury, Judicial District of Danbury.
3. The petitioner was arrested by warrant and charged with the crime of possession of a weapon or dangerous instrument in a correctional institution, in violation of General Statutes § 53a-174a.
4. On September 13, 1995, the petitioner entered an Alford[1] guilty plea to one count of Possession of a weapon or dangerous instrument in a correctional institution.
5. Following a canvass by the court, Dennis, J., and a finding that the petitioner's Alford guilty plea was knowingly and voluntarily entered with adequate advice and assistance of competent counsel, as well as a finding that there was a factual basis for the plea, the petitioner was sentenced, in accordance with the plea agreement, to a term of one (1) year to serve, consecutive to the sentence then being served by the petitioner.
6. The charge of Possession of a weapon or dangerous instrument in a correctional institution stemmed from an incident on March 22, 1995, in which the petitioner and his cellmate, Jacquin Santiago, who were incarcerated at Garner, a maximum security prison, were subjected to a shakedown inspection.
7. As a result of the inspection of the cell, in which each inmate was assigned to a specific bunk, correction officers found two concealed weapons: a metal shank hidden in Jacquin Santiago's pillow and a metal shank hidden within the petitioner's mattress.
8. The petitioner was charged in a disciplinary report with possession of contraband (i.e., the shank).
9. Jacquin Santiago was charged with two counts of possession of a weapon or dangerous instrument in a correctional institution. After a jury trial, Jacquin Santiago was found guilty on one count, namely the count charging him with possession of the shank discovered in his pillow, but was found not guilty on the count based on the shank found in the petitioner's mattress. Jacquin Santiago's conviction and fifteen-year sentence was upheld in State v. Santiago, 240 Conn. 97 (1997).
10. On October 19, 1995, the petitioner testified at Jacquin Santiago's trial on the aforementioned charges. The petitioner testified at Jacquin Santiago's trial that he pleaded guilty to the disciplinary report and the criminal charge, which both resulted from the March 22, 1995 shank discovery and confiscation. The petitioner also testified that the shank CT Page 2578-eb found in his mattress was his and that he pleaded guilty to the disciplinary report not only because he could get a better deal, but also because he was guilty of the charge.
11. The petitioner testified at the habeas corpus trial that he had received three disciplinary reports for having a shank prior to the incident at issue in the present petition. The petitioner testified that he pleaded guilty to the March 22, 1995 disciplinary report because of the lower sanctions that would be imposed. The petitioner also testified that he told his attorney, Paul Eschuk, to get a one-year sentence, which the petitioner knew would be served consecutively. The petitioner additionally testified that he entered his plea because he did not want to keep going back and forth from Northern Correctional Institution to the courthouse. The petitioner also testified that he never saw the correction officers' incident reports, but that if he had seen these reports, he would have gone to trial instead of entering the Alford
guilty plea. Lastly, the petitioner testified that he lied at Jacquin Santiago's criminal trial when he admitted guilt to the charge, but that he saw no harm in perjuring himself because he had already entered hisAlford guilty plea to his criminal charge.[2]
12. Attorney Eschuk has been admitted to practice in Connecticut since 1978 and has been a public defender since 1984. Attorney Eschuk saw the petitioner three times, sent him correspondence, and sent him the arrest warrant approximately in early September 1995, prior to the September 13, 1995 court date. Attorney Eschuk spoke with the petitioner prior to him testifying at Jacquin Santiago's criminal trial, and was surprised when the petitioner testified that the shank was his.
 DISCUSSION OF LAW
The petitioner's first count raises a claim of ineffective assistance of counsel. "The object of an ineffectiveness claim is not to grade counsel's performance . . . Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Strickland v.Washington, 466 U.S. 668, 697, reh. denied, 467 U.S. 1267 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction . . . has two components. First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness . . . The proper measure of attorney performance remains simply reasonableness CT Page 2578-ec under prevailing professional norms . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id., at 688.
"Second, the petitioner must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id., at 687.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52 (1985). Hill requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v. Commissioner, 234 Conn. 139, 151 (1995).
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations CT Page 2578-ed omitted.) Id., 156-57.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-86
(1988); Nardini v. Manson, 207 Conn. 118, 124 (1988); Magnotti v.Meachum, 22 Conn. App. 669, 674 (1990); Beasley v. Commissioner ofCorrection, [47 Conn. App. 253, 264 (1997), cert. denied, 243 Conn. 967
(1998)]." Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76
n. 2 (1998). "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." Nardiniv. Manson, supra, 207 Conn. 124.
The petitioner in this matter voluntarily pleaded guilty under Alford. "Reasons other than the fact that he is guilty may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect." North Carolina v. Alford, supra, 400 U.S. 33, quoting State v.Kaufman, 51 Iowa 578, 580, 2 N.W. 275, 276 (1879).
"The focus of a habeas inquiry where there has been a guilty plea is the nature of the advice of counsel and the voluntariness of the plea, not the existence of a purported antecedent constitutional infirmity. If a prisoner pleads guilty on advice of counsel, he must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases. McMann v. Richardson, 397 U.S. 759 (1970). Moreover, a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." (Internal citation and quotation marks omitted.) Buckley v. Warden,177 Conn. 538, 542-43 (1979).
While the petitioner attempts to insert evidence into "the record which impeaches the plea here made or which suggests that the admissions of the plaintiff in open court were anything but the truth"; Id., at 542; this court finds the petitioner's self-serving testimony to be utterly lacking in veracity. This court is, consequently, unable to assign any credibility to the petitioner's admission that he perjured himself at Jacquin Santiago's criminal trial and that he is not guilty of the charge. Additionally, the petitioner has failed both to proffer any evidence which would allow this court to assess whether or not the CT Page 2578-ee outcome of a trial in this matter would have been different and whether or not Attorney Eschuk would have changed his recommendation as to the plea because of the disciplinary reports. Because the petitioner has failed both to show that his attorney's performance was deficient and that he was prejudiced, this court concludes that count one of the amended petition is wholly without merit.
The remaining claims in count two are that the petitioner is actually innocent of the charged offense and that the trial court failed to ensure that the petitioner's plea was knowing, intelligent and voluntary. As to the actual innocence claim, "taking into account both the evidence produced in the original criminal trial and the evidence produced in the habeas hearing, the petitioner must persuade the habeas court by clear and convincing evidence, as that standard is properly understood and applied in the context of such a claim, that the petitioner is actually innocent of the crime of which he stands convicted. Second, the petitioner must establish that, after considering all of that evidence and the inferences drawn therefrom, . . . no reasonable fact finder would find the petitioner guilty." Miller v. Commissioner of Correction,242 Conn. 745, 791-92 (1997). The petitioner has fallen woefully short of the required showing of clear and convincing evidence.
Lastly, this court has reviewed the sentencing court's canvass. "A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all the relevant circumstances." (Internal citation marks omitted.) Daniel v. Commissioner of Correction,57 Conn. App. 651, 656, cert. denied, 254 Conn. 918 (2000), quoting Statev. Garvin, 242 Conn. 296, 310 (1997). The sentencing court's canvass complied with the constitutional requirements mandated by Boykin v.Alabama, 395 U.S. 238 (1969), and complied with Practice Book §§ 39-19
through 39-21. An examination of all the relevant circumstances in this case shows that the petitioner's last claim must also fail.
Accordingly, the petition for a writ of habeas corpus is denied.
S. T. Fuger, Jr., Judge