STATE OF CONNECTICUT *v.* ROBERT WATSON
(11330)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued December 3, 1985—decision released February 11, 1986

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Patricia A. King,* deputy assistant state's attorney, with whom was *John A. Connelly,* state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is a determination of the circumstances under which a court must initiate an evidentiary inquiry into a defendant's

competency before accepting his guilty plea or denying a motion to withdraw such a plea. The defendant, Robert Watson, a/k/a Ollie Ricketts, Jr., was charged, in a two count substitute information, with the crimes of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a)[1] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[2] The trial court, after a canvass, accepted the defendant's plea of guilty to each count. On the date set for sentencing, the defendant moved to withdraw his pleas of guilty. The court denied the motion and imposed a total effective sentence of not less than eight nor more than sixteen years.

The defendant, in his appeal to this court, raises four issues. The defendant claims that the trial court erred: (1) in finding that the defendant's pleas of guilty were voluntary without sufficiently inquiring into the defendant's mental capacity to enter into a plea; (2) in denying the defendant effective assistance of counsel on his motions to withdraw his guilty pleas by failing to allow the defendant to obtain substitute counsel; (3) in denying the defendant's motion that his request to withdraw his guilty pleas be heard by another judge; and (4) in denying the defendant's motions to withdraw his pleas for lack of mental capacity without an evidentiary hearing. We find no error.

---

[1] "[General Statutes] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

[2] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

## I

The pleas of guilty whose validity the defendant now challenges arose under the following circumstances. The defendant had originally been charged not only with sexual assault but also with kidnapping in the first degree. Motions relating to these charges were heard beginning November 20, 1981, and jury selection was begun on November 25, 1981. On December 9, 1981, in the midst of the jury selection process, the defendant informed the court that he wished to plead guilty to a substitute information in accordance with a plea bargain. The state filed a substitute information reducing the charge of kidnapping, a class A felony, to one of unlawful restraint, a class D felony. The state also agreed to enter a nolle prosequi with respect to other pending charges against the defendant upon imposition of a recommended sentence to imprisonment for an effective term of not less than eight nor more than sixteen years.

At the hearing at which the defendant entered his guilty pleas pursuant to *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970),[3] the state offered the following factual basis for the pleas. At about 12:30 a.m. on February 21, 1981, the victim was accosted by two black men as she was using a public telephone. The men forced her into their car and drove her to a wooded area where each of them sexually assaulted her. The victim escaped from the car and found a state trooper to assist her. The state trooper immediately reported the incident to the Waterbury police, including in his report the victim's description of the men, their car and the car's license number. Approximately twenty minutes later, the defendant and a male companion were stopped in Woodbridge not far

---

[3] An *Alford* plea allows a defendant in a criminal case to consent to punishment as if he were guilty without his express acknowledgment of his guilt.

from the scene of the assault. The car they were driving matched the victim's description. Medical evidence obtained at a hospital examination of the victim corroborated a sexual assault. The victim identified the defendant, in a photo array, as one of the men who had assaulted her. She also identified the car which the defendant had been driving when he was stopped as the car in which she had been sexually assaulted.

The court conducted the canvass required by Practice Book §§ 711 through 713 to determine whether the defendant's pleas were knowing, voluntary and intelligent. After it had made an inquiry into the defendant's educational history, the court asked the defendant about his medical history. In response to the court's questions, the defendant indicated that he was not presently under medication, that he had been treated for psychosis for the past eight months, that he had recently been taking one hundred fifty milligrams of Elavil and seventy-five grams of Mellaril, and that the last time he had received medication by prescription was two days earlier when he had taken fifty milligrams of Elavil. The defendant informed the court that his medication had been prescribed for him by an unidentified psychiatrist at the "state jail." The court thereupon asked the defendant whether he felt that the medication in any way impaired his present ability to reason, to understand the proceeding against him, or to make decisions on the matters before the court. The defendant replied, "No." The court further asked the defendant whether he felt he was able to think clearly, to weigh the various alternatives before him, and to make a responsible judgment on his own behalf. The defendant several times indicated that he had no doubt about his ability to participate fully in the plea.

The court thereafter turned its attention to other aspects of the plea canvass. The defendant was represented throughout the trial and the plea canvass by a

private attorney of his choice. The defendant affirmed that he had had a full opportunity to discuss his case with his attorney and that he was satisfied with the advice he had received. Although the defendant then manifested some emotional upset, he regained his composure after a minute or two. Toward the end of the canvass, having been advised by the court of the constitutional rights he was waiving, and that a guilty plea could not be withdrawn at the time of sentencing, the defendant asked to speak to his attorney. His attorney informed the court that the defendant had inquired whether his pleas of guilty would preclude his pursuit of a claimed constitutional infirmity in the grand jury proceedings and the search warrant in his case. Upon receipt of advice on that point, the defendant reiterated his wish to plead guilty to the charges. The court then made a finding that the defendant, with the effective assistance of counsel, had pled guilty knowingly, voluntarily and intelligently.

The defendant now challenges the trial court's determination of voluntariness and intelligence on the ground that the court failed to make a sufficient inquiry into the defendant's mental capacity at the time of the entry of the pleas. Relying on the undisputed principle that a guilty plea violates constitutional requirements of due process if, because of incompetence, the plea is involuntary or unknowing; *Drope* v. *Missouri,* 420 U.S. 162, 171–75, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *State* v. *Torres,* 182 Conn. 176, 184–86, 438 A.2d 46 (1980); the defendant argues that the circumstances at the plea hearing raised an unresolved doubt about the defendant's competence to plead guilty. Once such a doubt has been raised, the defendant maintains that a court becomes constitutionally obligated to determine whether a defendant is capable of making the reasoned choice essential to the validity of the guilty pleas. In making such a determination, the court is not entitled,

according to the defendant, to rely on such factors as the defendant's subjective statement that his reasoning powers are unaffected by his psychiatric history, the court's own observations of the defendant's expressions, conduct and statements during the trial, or defense counsel's acquiescence in the proceedings, but must, sua sponte, order an evidentiary hearing into the defendant's medical condition. Under the circumstances revealed by the record in this case, we disagree.

In *Myers* v. *Manson,* 192 Conn. 383, 389–91, 472 A.2d 759 (1984), this court recently reviewed the standard for competence to plead guilty that has been established by our statute; General Statutes § 54-56d (a); and by the applicable constitutional case law. *Dusky* v. *United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Because every valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, an understanding of the law in relation to the facts, and sufficient awareness of the relevant circumstances and likely consequences of the plea. *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Myers* v. *Manson,* supra, 389–90; *State* v. *Deboben,* 187 Conn. 469, 476, 446 A.2d 828 (1982); *State* v. *Torres,* supra, 184–85; *Buckley* v. *Warden,* 177 Conn. 538, 542, 418 A.2d 913 (1979); *State* v. *Battle,* 170 Conn. 469, 474–75, 365 A.2d 1100 (1976); *Consiglio* v. *Warden,* 160 Conn. 151, 166, 276 A.2d 773 (1970). A trial court's scrutiny of the voluntariness and the intelligence of a plea pursuant to Practice Book §§ 711 through 713 and *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), therefore necessarily implies that it has made an inquiry into the defendant's competence to plead. *Myers* v. *Manson,* supra, 390–91.

The question in this case is whether *Pate* v. *Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), required the court to make a further inquiry into competence once the defendant informed the court that he had been under psychiatric care for the previous eight months and had, as recently as forty-eight hours earlier, been taking prescription medicine relating thereto. As the state acknowledges, the rule of *Pate* v. *Robinson* imposes a constitutional obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial or to plead guilty. Id., 385. When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence. Id., 385–86. The crucial issue, therefore, is what triggers a defendant's right to an evidentiary hearing.

A defendant who challenges the validity of his guilty plea for lack of an evidentiary inquiry into his competence must make a showing that, at the time of his plea, the court had before it specific factual allegations that, if true, would constitute substantial evidence of mental impairment. *Sanders* v. *United States,* 373 U.S. 1, 21, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963). " 'Substantial evidence' is a term of art. 'Evidence' encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency . . . ." *Moore* v. *United States,* 464 F.2d 663, 666 (9th Cir. 1972).

In this case, the only evidence pointing to possible lack of competence was the defendant's brief and unsubstantiated reference to a history of psychiatric

treatment and medication. The history given by the defendant indicated that, at the time of the pleas, he had taken no medication for the past forty-eight hours. Although he told the court what drug he had been taking, and what the prescribed dosage had been, he did not reveal the name of his psychiatrist and he offered no medical report concerning the nature of the mental condition for which he had received treatment. The disclosure of the defendant's psychiatric history came to light as the result of the court's own routine canvass. Neither the crimes of which the defendant stood accused nor his conduct during the trial or the canvass indicated inappropriate affect or irrational behavior. His counsel had never requested a competency hearing, nor had he filed a notice of defense putting the defendant's mental state into issue. See General Statutes §§ 54-56d, 53a-13; Practice Book §§ 758, 759. On this record, the defendant did not present such substantial evidence about possible lack of competence as to require the court sua sponte to undertake a specific evidentiary inquiry into his ability to understand the proceedings against him or to assist in his own defense.

As in *Myers* v. *Manson,* supra, the record of the canvass undertaken by the court supports its implicit finding that the defendant was competent to plead guilty. The defendant responded appropriately to the court's questions testing his understanding of the plea agreement, the factual basis for the pleas, the meaning of the *Alford* plea, the constitutional rights which he was waiving, and the adequacy of the advice of counsel which he had received. Significantly, the defendant himself interrupted the canvass to receive clarification from his counsel about the effect that his guilty plea would have on alleged constitutional defects in the underlying criminal proceedings against him. When the defendant, toward the end of the canvass, exhibited a brief emotional upset, the court immediately took notice and

afforded him an opportunity to calm himself. Once the defendant had regained his composure, the court took pains to make sure that the defendant had been attentive to the questions previously put to him and had no further questions to ask. Only thereafter did the court resume its own inquiry, reiterating its earlier questions concerning the defendant's satisfaction with the advice he had received from his attorney. The canvass, on its face, is entirely consistent with an implicit finding of competency at the time the pleas of guilty were accepted by the court.

## II

The defendant's remaining claims of error challenge not the original plea canvass but the trial court's refusal to permit the defendant to withdraw his guilty pleas before sentencing. The defendant acknowledges that he did not have an absolute right to withdraw his pleas of guilty; see Practice Book § 720; but claims that the court nonetheless erred in this case because: (1) it refused to permit the defendant to obtain substitute counsel for the withdrawal hearing; (2) it did not recuse itself so that the withdrawal motions could be heard before a different judge of the Superior Court; and (3) it failed to hold an evidentiary hearing about the defendant's mental capacity at the time of the pleas. We disagree with the defendant's claims.

In the trial court, the defendant's timely motions to withdraw his guilty pleas relied upon his allegation that the pleas had been involuntary. See Practice Book § 721 (2).[4] To prove that the pleas had been involuntary, he alleged in his pro se motions that his pleas

---

[4] "[Practice Book] Sec. 721. ——GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of

resulted from judicial and prosecutorial coercion and bias, from impairment of his judgment due to the influence of "a psychosis drug" at the time of the plea, and from ineffective assistance of counsel. As a consequence of the filing of these motions on January 6, 9, and 11, 1982, defense counsel sought permission on January 15, 1982, to withdraw as attorney for the defendant. The record discloses no effort by the defendant to enlist the services of new counsel.

On January 22, 1982, the date for sentencing, when the motions for withdrawal of the guilty pleas were heard, defense counsel renewed his request to withdraw. The court denied the request, finding that the defendant's motions contained only conclusory allegations that did not constitute "good cause" as required by Practice Book § 632.[5] The court, however, permitted the defendant to file a supplementary pro se appearance, and indicated that the defendant could either be represented by privately retained counsel, if one could appear for the defendant after a brief recess, or could proceed pro se. Although the defendant expressed his preference for a private consultation, and although

the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[5] "[Practice Book] Sec. 632. ——WITHDRAWAL

"A motion for withdrawal of appearance shall be served on the prosecuting authority and other attorneys of record, and filed with the clerk in the same manner as entering an appearance. No such motion for withdrawal shall be granted by the judicial authority, except for good cause shown."

The court granted the defense counsel's motion to withdraw one month later.

more than two weeks had elapsed since he had filed his withdrawal motions, he acknowledged that he did not then have a specific attorney available. The defendant then asked to consult with a special public defender who was representing him on another case which was to be nolled as part of the plea bargain. When the court noted that the special public defender had not filed an appearance in the case scheduled for sentencing, the defendant agreed to consult with his original defense counsel.

Thereafter the trial court proceeded to hold a hearing on the motions for withdrawal of the guilty pleas, permitting the defendant either to have his original counsel address the court or to present his argument pro se. The defendant elected to go forward pro se. In support of the motions, the defendant reiterated that he had been unfairly pressured into plea bargaining against his better judgment, that he had been "coerced psychologically and manipulated in the courtroom," that he had been ineffectively represented by his counsel, and that he had been and continued to be "under . . . psychosis medication." After a contrary argument on behalf of the state, and brief rebuttal by the defendant, the court denied the defendant's motions. Having earlier observed that defense counsel had diligently and competently represented the defendant throughout the presentencing proceedings, the court ruled that the defendant had failed to establish any of the grounds for withdrawal of an accepted guilty plea set out in Practice Book § 721.[6]

---

[6] At the sentencing proceedings which immediately followed the denial of the defendant's motions, the court sentenced the defendant in accordance with the previously noted plea agreement. In each of the related files charging the defendant with possession of marijuana, failure to appear, and bribery, the court noted the state had terminated further prosecution by the entry of a nolle prosequi. On appeal, the defendant does not challenge the validity of the sentences he received.

The defendant on this appeal does not directly contest the trial court's conclusion that he had failed to show good cause for the disqualification of his counsel. Any claim of ineffective assistance of counsel has been put to rest in habeas corpus proceedings that were concluded while this appeal was pending. *Watson* v. *Manson,* Superior Court, judicial district of Hartford-New Britain, Docket No. 269105 (1982). His argument appears to be that unsupported allegations of ineffective assistance and conflict of interest, regardless of their merits, automatically require the court to furnish the disgruntled client an unlimited opportunity to obtain alternate counsel. The defendant cites no Connecticut authority for this proposition, and we know of none. It is the province of the trial court to determine whether there is a factual basis for disqualification of counsel. In such a determination, the trial court is entitled to consider whether the defendant's effort to displace existing counsel has substantive merit and is being pursued in good faith. See *State* v. *Dukes,* 157 Conn. 498, 506, 255 A.2d 614 (1969). In the absence of a factual record showing an abuse of discretion, the trial court's failure to permit the withdrawal of counsel is not reversible error. See *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 302–303, 377 A.2d 330 (1977). Furthermore, this court has only recently held that the inability to be represented by specific counsel, in the absence of demonstrated lack of effective representation, does not per se require a trial court to permit a continuance. *State* v. *Beckenbach,* 198 Conn. 43, 50, 501 A.2d 752 (1985); see *State* v. *Stanley,* 197 Conn. 309, 497 A.2d 46 (1985). The decision to grant or deny a continuance lies within the sound discretion of the trial court and will be upset on appeal only upon a showing of clear abuse of that discretion. *State* v. *Beckenbach,* supra, 47; *State* v. *Stanley,* supra, 311–12. On the present record, the

defendant has not established that the trial court's decision to deny his request for a continuance constituted an abuse of its discretion.

For similar reasons, we find no error in the trial court's failure to recuse itself from hearing the defendant's motions to withdraw his guilty pleas. The only possibly relevant fact before the court was that the defendant had alleged, in an entirely conclusory fashion, that he had been coerced into pleading guilty because of the collusion of the court with counsel for the state and for the defense. In the absence of a showing, on the record, that the trial court had been an active participant in negotiating the plea bargain, the trial court was entitled to reject such a conclusory allegation as warranting no further consideration. See *State* v. *Lopez,* 197 Conn. 337, 348–50, 497 A.2d 390 (1985); *State* v. *Gradzik,* 193 Conn. 35, 44–48, 475 A.2d 269 (1984); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 8, 469 A.2d 778 (1984). Indeed, the issue of disqualification was only raised by defense counsel, apparently as an afterthought, after the trial court had already ruled adversely on the motions for withdrawal of the guilty pleas.

The defendant's final and more serious claim of error is that the trial court should not have denied his motions for withdrawal of his guilty pleas without then holding an evidentiary hearing into his mental competence at the time of the acceptance of his guilty pleas. This claim must be appraised in the context in which the issue was raised in the trial court.

Although the defendant made a claim, both in his written motions and in his arguments to the court at the withdrawal hearing, that he had been under the influence of "psychosis medication," pursuit of that claim was not, in the trial court, the primary focus of his attack on his guilty pleas. The principal claim which

he then addressed was that, because of ineffective assistance and advice from his counsel, he had been improperly persuaded to plead guilty. He repeatedly stated his desire to establish his innocence of the crimes with which he had been charged. Only once did he briefly advert to the claim that "[a]t the time plea was made and canvass was taken, your Honor, as you do know, as the record indicates . . . I was and still am under medication, psychosis medication. And, at this time I am under medication." Notably, despite his allegation that he was continuing to take "psychosis medication," he did not then claim, and does not claim now, that he was incompetent to participate in any proceedings other than those which occurred when his guilty pleas were accepted.

In the light of this record, we are unpersuaded by the defendant's assertion that the trial court erred in failing to hold an evidentiary hearing on the issue of the defendant's mental state at the time of the guilty pleas. Procedurally, we note that the defendant did not himself request an evidentiary hearing at any time, and his counsel made no such request until after the court had ruled adversely on the defendant's motions to withdraw his guilty pleas, when the court had already announced its readiness to proceed with sentencing. Substantively, the defendant does not satisfy the test laid down in *State* v. *Torres,* supra, 185–86, where we held that "[i]n considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea under § 721, and are not conclusively refuted by the record of the plea pro-

ceedings, and other information contained in the court file, then an evidentiary hearing is required." See *State* v. *Lasher,* 190 Conn. 259, 266, 460 A.2d 970 (1983).

In this case, the defendant's only allegations of fact at the time of the plea canvass had been that he had recently been taking prescription medicine, namely Elavil and Mellaril, and that he had been under psychiatric treatment for eight months. These allegations were in no way further substantiated in the motions for withdrawal of the pleas or in the hearing held on those motions.

In his motions for withdrawal of his guilty pleas, the defendant merely reiterated the name of the medications allegedly prescribed for him,[7] but again failed to offer any specifics whatsoever about the nature or purpose of the medication or about the particular mental disease for which it had been prescribed, or the identity of the prescribing physician. This meager showing was insufficient to impose on the trial court an independent duty to search the pharmaceutical literature to discover the allegedly "psychotic" condition for which such medication is normally prescribed or to determine what effect the taking of such medication would have on competence to plead guilty. Compare *State* v. *Smith,* 185 Conn. 63, 86–87, 441 A.2d 84 (1981). Similarly, it was reasonable for the trial court to have assigned little or no significance, for evidentiary purposes, to the defendant's vague and conclusory allegation of psychiatric treatment for an unnamed psychotic condition of undisclosed etiology. In sum, we agree with the trial court that the defendant failed to sustain his

---

[7] In his pro se motion to withdraw his pleas, the defendant misstated the names of the drugs in question. He claimed in his motion that he had been under the influence of "Elivil" and "Benedrly" when he pleaded guilty. During the plea canvass, he had identified the medication as "Elevil" and "Mellaril."

burden of coming forward with sufficiently specific unrefuted factual allegations to require an evidentiary inquiry into his alleged incompetence at the time of the acceptance of his guilty pleas.

There is no error.

In this opinion HEALEY, DANNEHY and CALLAHAN, Js., concurred.

SHEA, J., dissenting. I disagree with the portion of the majority opinion that finds no error in the refusal of the trial court to allow a continuance so that the defendant would not be confronted with the Hobson's choice of self-representation or continued representation by the attorney whom he had charged not only with incompetence but also with disloyalty and deceit.[1]

In his motions to withdraw his guilty pleas the defendant alleged that his attorney had pressured him into pleading guilty and that his "attitude was one of disregard, distrustful, sneaky, disloyal, hostile, and one of disbelief." Recognizing the conflict of loyalties

---

[1] Paragraph 5 of the defendant's motion to withdraw his plea, which was signed by him personally, was as follows:

"5) As to the question of satisfaction with my attorney, what critera [sic] can a layman use to judge the competence of his attorney? You asked if I was satisfied with his representation — in his representing me the answer is yes, but do I feel he was competence [sic] in representing me to the best of his ability, No. My attorney's defeatism attitude and open court presentation of his speech in regards to the case and the states case has also given me a chilling affect [sic] to his ability to protect my rights (as described in the constitution). My attorney's constant in court companionship with my adversary would leave one thinking—and by his actions—that he felt we were defeated from the beginning and that he could best serve the court by constantly presenting plea bargains, and using the personal exposure that I faced if I lose. My attorney's attitude was one of disregard, distrustful, sneaky, disloyal, hostile, and one of disbelief. If my attorney felt that way then he should have expressed that fact in the beginning instead of just trying to collect a substantial fee, for service not rendered in the best interest of his client. I may not be versed in law to any distinguishable degree but I do know a con-game when I see it."

created by these allegations of the defendant, his attorney quite properly sought to withdraw his appearance, a request that the trial court denied. "[A] lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or *reasonably may be affected* by his own . . . personal interests." (Emphasis added.) Code of Professional Responsibility, DR 5-101. The disloyalty and incompetence of his attorney were some of the grounds upon which the defendant sought to withdraw his pleas. The conflict of interests inherent in a situation where an attorney must assert his own misconduct as a basis for relief to his client is plain. Once a client has accused his attorney of serious misconduct, such as that charged by the defendant in this case, continuance of the attorney-client relationship at the behest of the court is incompatible with the canons of professional ethics.

The trial court's failure to perceive the grotesquerie created by its insistence that the defendant continue to be represented by an attorney obviously inhibited by his personal interests in presenting his client's claims implicates the fundamental constitutional rights of counsel and of due process. The right to effective counsel must be deemed to preclude representation by an attorney who must necessarily besmirch himself in order to advocate his client's position properly. To present the defendant with this choice of representation as the sole alternative to becoming his own attorney makes a mockery of this constitutional right. At the time he attempted to withdraw his pleas the defendant appears to have been indigent, because he was then represented by a public defender in another pending case. The court, therefore, may well have been skeptical of his ability to retain another private attorney to replace the counsel he had engaged earlier in the proceeding. This circumstance, however, does not excuse the failure of the court to conduct the inquiry prescribed

by Practice Book § 961[2] before permitting the defendant to proceed without counsel. See *State* v. *Gethers,* 193 Conn. 526, 534–39, 480 A.2d 435 (1984). Under this rule the court was obliged to advise the defendant of his right to appointed counsel if his indigency made private counsel unavailable to him. A defendant who is represented by private counsel may be required to show good cause to warrant his replacement by a public defender during the course of a criminal proceeding. The conflict of interests that arose here, however, when the defendant alleged misconduct by his attorney as a basis for withdrawing his pleas, was an ample demonstration of the necessity for a substitution of counsel. See *McKee* v. *Harris,* 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982); *United States* v. *Calabro,* 467 F.2d 973, 980 (2d Cir. 1972), cert. denied, 410 U.S. 926, 93 S. Ct. 1358, 35 L. Ed. 2d 587, reh. denied, 411 U.S. 941, 93 S. Ct. 1891, 36 L. Ed. 2d 404 (1973).

Under these circumstances the defendant's election to represent himself in pursuing his motions to withdraw his guilty pleas was not the result of a knowing and voluntary waiver of his right to counsel. *United States ex rel. Martinez* v. *Thomas,* 526 F.2d 750, 755

[2] "[Practice Book] Sec. 961. ——WAIVER

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

(2d Cir. 1975). The refusal of the court to allow a continuance to afford the defendant a reasonable opportunity to obtain new counsel, therefore, not only infringed upon his right to counsel but effectively deprived him of due process of law.

Accordingly, I would set aside the judgment and remand the case for further proceedings upon the motion of the defendant to withdraw his guilty pleas.