KAHN, J.
**823 This appeal presents us with a common scenario: a trial court accepts a guilty plea after a proper canvass, but the defendant subsequently seeks to withdraw the plea due to a change of heart. The question that often emerges from this familiar context is the extent to which the trial court must inquire into the defendant's request. In this case, the Appellate Court concluded that the trial court abused its discretion by failing to conduct (1) an evidentiary hearing on the defendant's motion to withdraw his plea, and (2) an adequate inquiry into the defendant's request for new counsel. The state appeals[1] from the judgment of the Appellate Court reversing the judgment of conviction of the defendant, Earl C. Simpson III, following his guilty plea entered under the Alford[2] doctrine of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8.[3] State v. Simpson , 169 Conn. App. 168, 171-72, 150 A.3d 699 (2016). The state claims that the Appellate Court improperly concluded that the trial court was required to hold hearings on the defendant's motion to withdraw his guilty plea and his request for new counsel. Alternatively, the state claims that the Appellate Court improperly concluded that the trial court did not conduct such hearings. The defendant counters that hearings on both the motion and the request were required, and that the Appellate Court properly **824 concluded that the trial court failed to conduct them. We conclude that the trial court, after conducting a hearing on the defendant's motion to withdraw his guilty plea, properly denied the motion to withdraw, and, therefore, no evidentiary hearing was required. We also conclude that, under the circumstances of this case, no hearing was required on his request for new counsel. Therefore, the *1219 judgment of the Appellate Court is reversed.
The Appellate Court set forth the following facts and procedural history. "The defendant, represented by counsel, entered an Alford plea[4] in this case on September 19, 2014. The state, by way of a long form information, filed on June 29, 2012, charged the defendant in count one with felony murder under General Statutes §§ 53a-54c and 53a-8, in count two with murder as an accessory under §§ 53a-54a (a) and 53a-8, and in count three with robbery or attempt to commit robbery in the first degree in violation of General Statutes § 53a-134 (a) (1)." (Footnote added and omitted.) State v. Simpson , supra, 169 Conn. App. at 172, 150 A.3d 699.
The defendant pleaded guilty under the Alford doctrine to murder in violation of § 53a-54a and admitted that he had violated his probation in violation of General Statutes § 53a-32. Then, "[t]he prosecutor addressed the court to set forth the factual basis underlying the plea **825 with respect to the murder count, as follows: '[W]ith respect to the plea on the second count of murder, the state is prepared to prove the following facts: On July 9, 2011, at about 6 p.m., New Haven police officers responded to the area of Howard Avenue and Putnam Street based upon a report of shots fired. They located the body of John Claude James, age twenty-six. It was evident to them that he had been shot several times. A later autopsy determined that he had been shot five times in the back area. All but one bullet had exited the body. [Those bullets] were never located.
" 'During the investigation, a witness stated she was in her apartment nearby. Moments after hearing the shots, Cody Franklin and the defendant ... ran into her apartment. Franklin said that he had just shot someone. The witness also said [the defendant] offered her weed to say that he and Franklin had not been in her apartment. [The defendant] then called his sister, Isis Hargrove, asking her to pick them up. Franklin and the defendant ... were a short time later seen getting into Isis' car and leaving the area. Also, a witness told [the] police he saw Franklin shoot ... James and [the defendant] was with Franklin at the time.
" 'The crime scene investigation resulted in the location of six shell casings found in the immediate area where witnesses saw the shots being fired. A ballistics examination disclosed that five casings had been ejected from the same gun, while the sixth casing was ejected from a different gun. Such [evidence] is clearly consistent with there being two shooters. Another witness told police that he saw Franklin and [the defendant] together just before the shooting and saw ... Franklin fire shots, but he did not admit that he had seen [the defendant] fire any shots.
" 'On May 19, 2014, the defendant ... was being interviewed by a member of the State's Attorney's Office **826 in Waterbury *1220 in connection with another shooting. When asked about the previous shooting of ... James, the defendant ... admitted that he was one of the shooters.[5]
"Thereafter, the court canvassed the defendant with respect to his [murder and probation] pleas. During the canvass, the defendant stated that he was not under the influence of any alcohol, drugs or medication; he had had a sufficient opportunity prior to the plea canvass to discuss his pleas with counsel; he was satisfied with his counsel's advice; he was entering his 'guilty plea' and his 'probation plea' voluntarily; and nobody was forcing or threatening him to enter the pleas. The defendant stated that he understood the rights he was giving up by entering his pleas, including his right against compulsory self-incrimination, his right to a trial by jury, and his right to confront his accusers.
"The following colloquy between the court and the defendant ensued:
* * *
" 'The Court: ... On the crime of murder, the state would have to prove that with the intent to cause the death of another person, you caused the death of such person or of a third person, and that is punishable by up to sixty years in prison, twenty-five years at the minimum or nonsuspendable portion. Do you understand that?
" '[The Defendant]: Yes.'
"The court proceeded to ask the defendant if he understood the nature of an Alford plea and if he **827 understood the sentence to which he was exposed as well as the agreement in place with the state for a sentence of thirty-two and one-half years imprisonment, with a twenty-five year minimum sentence. The defendant stated that he understood these matters and that no additional promises had been made to him with respect to the pleas. The court stated: 'Once I accept these pleas, you can't change your mind later on unless there's some valid legal reason. Do you understand that?' The defendant replied affirmatively. At the conclusion of the canvass, the defendant stated that he had understood the questions directed to him by the court and that there was nothing that he wished to raise to the court or his attorney prior to the court's acceptance of the pleas.
"The court accepted the defendant's pleas, finding that they were 'understandably made with the assistance of competent counsel.' The court found that the defendant was 'guilty' and that he had violated his probation. The court then continued the matter to a later date.
"By handwritten letter dated October 27, 2014, and addressed to the court, the defendant stated that he wanted to withdraw his [murder] plea and that he desired a new attorney. In relevant part, the letter, signed by the defendant, stated: 'I request to withdraw my guilty plea. I have a legitimate claim. I am not guilty of murder. I am claiming ineffective counsel. I was not explained all elements of the crime of murder. There was no testimony at ... Franklin's trial that I assisted, aided, or conspiracy. There was no intent on my part. The mere fact that I did not assist and help ... Franklin from the testimony of the state witnesses is enough to have the charges against me dismissed.
*1221 " 'Had my attorney investigated and told me all the facts I wouldn't have pled guilty to a charge that I didn't **828 commit. I felt pressured to take the plea because I was told I had "no chance" of winning [at] trial. Individuals trying to say I confessed to things I did not. I didn't sign anything or state anything on the record. (About this so-called confession.)
" 'I need a new attorney and I need for him to request a "[m]otion to vacate" and a[n] "evidentiary hearing." My counsel also failed to file a "motion to dismiss" the murder charges after ... Franklin's trial. Please look into this matter.'
"Additionally, the defendant wrote: 'My attorney never told me the difference between accessory after the fact and obstruction of justice, and aiding and abetting. I never and did not encourage, and or facilitate or participate in the crime by the testimony of the state witness. I had "NO" knowledge that anyone was going to kill anyone. I request a new attorney and to withdraw my plea. Also a[n] evidence hearing on this matter. Ineffective counsel and evidence hearing. Please withdraw my plea. I couldn't make an intelligent decision. Please look into this matter.'
"On December 4, 2014, through counsel, the defendant filed a motion to withdraw his guilty plea pursuant to Practice Book §§ 39-26 and 39-27. In relevant part, the motion stated: 'In subsequent written and oral communications between the defendant and undersigned counsel, the defendant has indicated he did not possess knowledge or fully understand the sentence that could be imposed or the consequences thereto at the time he entered the guilty plea.' The state filed a written opposition to the defendant's motion....
"By a second handwritten letter, dated December 8, 2014, and addressed to the court, the defendant renewed his request to withdraw his plea and for new counsel. The letter, signed by the defendant, stated in relevant part: '[T]here are a few things I would like to **829 bring to your attention. First and foremost, I was in (special aid) in school and didn't have enough time to be fully explained anything about my charges. I just came and it was on the table. (Accept or reject.) My lawyer never explained the full conditions to ... such charge I was suppose[d] to plea to in which any evidence points to me as an accessory to. I never had a legal visit or anything. I would really like to take this plea back. My lawyer talked me into something I didn't want to do. I was confused. When I came to court I've told him this personally and that I would like a new lawyer. ( [In]effective counsel.) He didn't put any motions in to try to get any hearings when I asked for some. When I was explained about my charge after the fact I told him to withdraw my plea. He wants to wait until the last minute going against my wishes. This is my life on the line and I would like to withdraw and go to trial. Because I'm not responsible for this charge that's against me. Please. I would really appreciate it a lot. Also requesting a new lawyer. I told my old lawyer, Thomas Farver, [that] I wanted to request a new one and I don't think he put it in and went around what I said. I have [a] court [appearance on December] 19, 2014 that is suppose[d] to be a sentencing date. I really hope you grant the motion for my plea to be withdrawn.'
"The defendant, represented by counsel, appeared in court on December 19, 2014, for sentencing. At the beginning of the hearing, the court stated: 'I know the defendant had sent some letters to me which seemed to indicate that, possibly, he was interested in withdrawing his plea.' ... The following colloquy then occurred:
" 'The Court: So, I guess I should ... ask [the defendant] ... is he still pursuing a motion to withdraw this plea? ...
*1222 " '[The Defendant]: Mm-hm. Yes.
**830 " 'The Court: All right. And the basis I just read that your lawyer put in [the motion to withdraw the plea], is that ... you did not possess knowledge or fully understand the sentence or the consequences thereto? " '[The Defendant]: Yes.
" 'The Court: All right. Do you want ... to explain it any more than that? Why is it you ... want to withdraw your plea?
" '[The Defendant]: Why do I want to-because I feel like everything wasn't explained. It was like, as soon as I got to court, boom, it's just like ... take this right now. You go to trial, you losing. It was like I was forced to take it. I felt like I was forced to take the plea.
" 'The Court: And who forced you to take the plea; the system, you mean, or the court or-
" '[The Defendant]: No, my lawyer.
" 'The Court: Your lawyer, how did he force you?
" '[The Defendant]: It's like, he told me right there, if I don't take it ... I'm gonna lose; that's what he said.
* * *
" 'The Court: All right. I mean, it is a matter of, just, you're changing your mind now, kind of, like, buyer's remorse, or did you think about it longer and think you just, you know, maybe you didn't make the right decision; is that what it is?
" '[The Defendant]: Yes.'
"The court then referred to the transcript from the plea canvass on September 19, 2014. The court asked the defendant if he remembered the court having asked him a series of questions at that earlier proceeding. The defendant replied, 'Yeah. Yeah, somewhat.' The court asked the defendant if he recalled answering that he **831 was not under the influence of alcohol, drugs, or medication and that he had had a sufficient opportunity to discuss the plea with his attorney. The defendant replied, 'No.' The court asked the defendant if he recalled answering that he was satisfied with his attorney's advice concerning the pleas, that he was entering the pleas voluntarily, and that nobody was forcing or threatening him to enter the pleas. The defendant replied, 'Yeah, some of it.' Additionally, the court asked the defendant if he recalled answering that no additional promises had been made to him, and that he understood that he would not be permitted to change his mind and withdraw his pleas absent a valid legal reason to do so. The defendant replied, 'Yes.'
"The following colloquy then ensued:
" 'The Court: In other words, so the transcript seems to bear out that a lot of questions I asked you was, did you need more time with your lawyer, are you satisfied with your lawyer's advice, is anybody forcing you to do this. And the transcript reflects, and so does my recollection, that you ... answered everything appropriately at that time. And as you've just answered me today, it sounds like you just thought ... longer over it since that day and you really just want to change your mind. Is that right?
" '[The Defendant]: Yes.'
"When asked if he wished to be heard, the defendant's attorney stated: 'I don't have anything to add other than the representations in the motion as reasons that my client gave me that he wish[ed] to withdraw the plea. And I don't see, in the transcript [of the plea canvass], any technical reasons that would be supported by the Practice Book.' When afforded an opportunity to address the court with respect to the motion to withdraw the plea, the prosecutor added, in addition to his **832 written *1223 objection, that the defendant had prior experience in the criminal justice system.
"The court stated: 'The problem I'm having ... and I know it was a big decision, and I know we're talking, obviously, about a ... very long prison sentence, I certainly understand that, but, you know, there is no right to have a plea withdrawn after the plea has been entered and [the defendant has been] canvassed by the court. And the burden of proof is certainly on you to show a plausible reason for the withdrawal of that. And the problem is that ... a lot of the statements that are in the written motion are very conclusory type of statements. There aren't a lot of facts or meat to it, so to speak.
" 'And it certainly sounds like ... from what you've indicated ... it's more of the change of heart after thinking about it longer while waiting to be sentenced, by your own admission here today. Because the transcript [of the plea canvass] clearly bears [that] out and, certainly, so does my recollection, that you certainly appeared to understand what was going on. You indicated no force was being used or no threats to you, that your ... plea was voluntary.
" 'So, certainly, based on what you said here today, based on the transcript of the plea proceedings, I don't think there's ... a valid reason to withdraw your plea at this time or even to give you ... any type of an evidentiary hearing. So, I'm going to deny the request.' " (Footnote added and omitted.) Id., at 173-82, 150 A.3d 699. The court then "vacated the defendant's probation and imposed a sentence of thirty-two and one-half years of imprisonment, twenty-five years of which is nonsuspendable." Id., at 183, 842 A.2d 567.
The defendant appealed, claiming that the trial court abused its discretion by denying his motion to withdraw his guilty plea, and, alternatively, that the trial court **833 failed to conduct the requisite evidentiary hearing on that motion. Id., at 171, 150 A.3d 699. The defendant also alleged that the trial court abused its discretion by not inquiring into his complaints about counsel.[6] Id.
With regard to the defendant's motion to withdraw his guilty plea, the Appellate Court agreed that the trial court "abused its discretion in failing to conduct [an] evidentiary hearing ... to determine whether the defendant understood the nature of the charge to which he pleaded guilty under the Alford doctrine." Id., at 194, 150 A.3d 699. It reasoned that such a hearing was required, pursuant to Practice Book § 39-27 (2) ; id., at 190-91, 150 A.3d 699 ; which lists as one of the grounds for withdrawing a guilty plea, circumstances in which the "plea was involuntary, or ... entered without knowledge of the nature of the charge ...." Practice Book § 39-27 (2). The Appellate Court held that, by alleging that he did not understand "the nature of the charge," the defendant met the requirements of § 39-27 (2), and an evidentiary hearing on the matter was required because the record did not conclusively refute his claim. State v. Simpson , supra, 169 Conn. App. at 190-91, 200, 150 A.3d 699. Specifically, the Appellate Court expressed concern that the record did not refute the defendant's claim that he did *1224 not understand the distinction between culpability for murder as a principal and as an accessory, and that the plea was therefore unknowing and involuntary. Id. The Appellate Court also concluded that "the court abused its discretion by failing to inquire into [the defendant's] complaints" about counsel. Id., at 200, 150 A.3d 699. It observed that the defendant **834 made "a seemingly substantial complaint concerning a breakdown in the relationship between [him] and his counsel"; id., at 202, 150 A.3d 699 ; and that "the court failed to conduct any type of inquiry into the defendant's grievances or his request for the appointment of a new attorney." (Emphasis in original.) Id., at 204, 150 A.3d 699. The Appellate Court therefore reversed the judgment of the trial court. Id. This certified appeal followed.
As a preliminary matter, we observe that we granted certification to determine whether a hearing was required on either the defendant's motion to withdraw his plea or his request for new counsel, not whether an evidentiary hearing was required. See State v. Simpson , 324 Conn. 904, 151 A.3d 1289 (2016) ; see also footnote 1 of this opinion. By necessity, however, we are modifying the first certified issue to better reflect the Appellate Court's conclusion that an evidentiary hearing was required on the defendant's motion to withdraw his guilty plea. Therefore, the first issue presented is whether the Appellate Court properly concluded that the trial court erred in failing to conduct an evidentiary hearing on the defendant's motion to withdraw his plea. We need not modify the second issue, however, which is whether the Appellate Court properly concluded that the trial court abused its discretion by failing to conduct a hearing or an adequate inquiry into the defendant's request for new counsel.
The state argues that the trial court was not required to hold a hearing on the motion to withdraw the plea, because, among other reasons, the defendant was represented by counsel who conceded that there were no grounds for withdrawal. Additionally, the state claims that the trial court was not required to hold a hearing on the defendant's request for new counsel because his complaints were insubstantial. Alternatively, the state asserts that the trial court granted hearings on both the **835 motion to withdraw and the request for new counsel.[7] Therefore, the state claims, the trial court did not abuse its discretion. In response, the defendant argues that his claims, "if true, constituted sufficient grounds to withdraw the plea as not knowing and voluntary, warranting an evidentiary hearing to determine that issue." Thus, the defendant contends, the trial court abused its discretion in failing to hold such a hearing. The defendant also asserts that his statements about counsel indicated a breakdown in communication amounting to a substantial complaint, which required a hearing on the request for new counsel, which the trial court failed to conduct.
We conclude that the trial court conducted a hearing on the defendant's motion to withdraw his guilty plea, after which no further evidentiary hearing was required, because his allegations did not furnish a proper basis for withdrawal under Practice Book § 39-27. We also hold that the trial court was not required to conduct a hearing on the defendant's request for new counsel. We address the reasoning behind each conclusion in turn.
*1225 I
The state's first claim is that the Appellate Court improperly concluded that the trial court deprived the defendant of a hearing on his motion to withdraw his guilty plea because the trial court actually conducted such a hearing. Alternatively, the state asserts that the trial court was not required to hold a hearing on the motion. We conclude that the trial court did conduct a hearing on the motion to withdraw and that an evidentiary hearing was not necessary.[8]
**836 "As a preliminary matter, we set forth the applicable standard of review. It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty.... To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [ Practice Book § 39-27 ].... Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused.... In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action.... Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did....
"Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: A defendant may withdraw his ... plea of guilty ... as a matter of right until the **837 plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his ... plea upon proof of one of the grounds in [Practice Book §] 39-27 ...." (Citations omitted; emphasis in original; internal quotation marks omitted.) State v. Anthony D. , 320 Conn. 842, 850, 134 A.3d 219 (2016).
"We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea." Id., at 851, 134 A.3d 219. "[T]he administrative need for judicial expedition and certainty is such that trial *1226 courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions of an invalid plea in hopes of delaying their sentencing." Id., at 860-61, 134 A.3d 219.
When the trial court does grant a hearing on a defendant's motion to withdraw a guilty plea, the requirements and formalities of the hearing are limited. See State v. Watson , 198 Conn. 598, 609, 504 A.2d 497 (1986) (describing proceeding as plea withdrawal hearing at which defendant was given opportunity to articulate support for motion in court, and state responded). Indeed, a hearing may be as simple as offering the defendant the opportunity to "present his argument" on his motion for withdrawal. Id. As one court observed, an evidentiary hearing is rare, and, outside of an evidentiary hearing, "often a limited interrogation by the [c]ourt will suffice [and] [t]he defendant should be afforded [a] reasonable opportunity to present his contentions." (Internal quotation marks omitted.) Thomas v. Senkowski, 968 F.Supp. 953, 956 (S.D.N.Y. 1997).
**838 Thus, when conducting a plea withdrawal hearing, a trial court may provide the defendant an opportunity "to present a factual basis for the motion" by asking open-ended questions. State v. Anthony D. , supra, 320 Conn. at 856, 134 A.3d 219. In State v. Anthony D. , supra, at 856, 134 A.3d 219, for example, this court concluded that the trial court had afforded defense counsel an opportunity to support a plea withdrawal motion when it asked, " '[a]s an officer of the court, do you know of any defect in that plea canvass that would allow the court to, in fact, take back the plea at this time?' "
Furthermore, in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea, "we do not examine the dialogue between defense counsel and the trial court ... in isolation" but, rather, evaluate it in light of other relevant factors, such as the thoroughness of the initial plea canvass. Id., at 857-58, 134 A.3d 219. We observe that other courts have similarly flexible conceptions of plea withdrawal hearings. See, e.g., United States v. Davis , Docket No. 99-1246, 2000 WL 1728072, *1 (2d Cir. November 21, 2000) (describing court proceeding as plea withdrawal hearing at which defendant, "defense counsel, and an [a]ssistant United States [a]ttorney appeared," and defendant "reiterated that he wanted to withdraw his plea").
This flexibility is an essential corollary of the trial court's "authority to manage cases before it as is necessary." Krevis v. Bridgeport , 262 Conn. 813, 819, 817 A.2d 628 (2003). "The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases." Id. Therefore, the trial court is not required to formalistically announce that it is conducting a plea withdrawal hearing; nor must it demarcate the hearing from other related court proceedings. It may conduct a plea withdrawal hearing as part of another court proceeding, such as a sentencing **839 hearing. See State v. Watson , supra, 198 Conn. at 600, 609 and n.6, 504 A.2d 497 (finding no error where trial court probed into defendant's motion for plea withdrawal "immediately" before "sentencing proceedings"). When a trial court inquires into a defendant's plea withdrawal motion on the record, it is conducting a plea withdrawal *1227 hearing. See id., at 609, 504 A.2d 497 (describing proceeding as plea withdrawal hearing where defendant presented arguments for withdrawing plea, state responded, and defendant rebutted).
In the present case, the trial court conducted a hearing on the defendant's motion to withdraw his guilty plea. The record reflects that the trial court gave the defendant a "reasonable opportunity to present his contentions." (Internal quotation marks omitted.) Thomas v. Senkowski, supra, 968 F.Supp. at 956.
A review of the trial court's approach illustrates the adequacy of the hearing. The court began by confirming that the defendant was indeed pursuing a motion to withdraw his plea, and that it was because he did not understand "the sentence or the consequences thereto."[9] The trial court then asked if the defendant wanted to "explain [his motion to withdraw the guilty plea] any more than that."[10] Thus, it allowed the **840 defendant "to present a factual basis for the motion" through an open-ended question. State v. Anthony D. , supra, 320 Conn. at 856, 134 A.3d 219.[11]
The trial court built upon that initial open-ended inquiry with a series of incisive questions, in response to which the defendant's core argument changed. At first, the defendant criticized his attorney's advice, and explained that he believed that his attorney forced him to take the plea. When the trial court subsequently asked if the defendant's rationale was that he had simply changed his mind and had "buyer's remorse," the defendant responded affirmatively. Faced with two conflicting justifications for the motion to withdraw, the trial court then took the time to review the transcript of the prior plea canvass with the defendant. Relying on the transcript, the trial court reminded the defendant that he had already informed the court that he was "satisfied with [his] attorney's advice," had a sufficient opportunity to discuss the plea with his attorney, and was entering the plea of his own free will. The defendant *1228 also admitted that, during the prior plea canvass, he had agreed that, once the trial court accepted his plea, he would not be able to withdraw it without a valid legal reason. After the review of the plea canvass, the trial court asked the defendant: "[I]t sounds like you just thought ... longer over [the plea] since that day and **841 you really just want to change your mind. Is that right?" The defendant replied, "[y]es."
The trial court then gave defense counsel and the state the opportunity to speak on the motion. The trial court then terminated the hearing by denying the plea withdrawal motion and the request for an evidentiary hearing.
Although the exact contours of a hearing on a motion to withdraw a guilty plea may vary in keeping with the trial court's discretion on such matters, we are confident that the trial court's thorough evaluation of the defendant's rationale in the present case was sufficient. It is irrelevant that the court did not explicitly label its inquiry into the defendant's motion as a hearing. Nor does it matter that the trial court addressed the defendant's motion during sentencing. The defendant and his attorney both had ample opportunity to meet their burden of establishing "a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) State v. Anthony D. , supra, 320 Conn. at 850, 134 A.3d 219.
Additionally, because we do not view the hearing in isolation but can look to other factors, such as the existence of a thorough plea canvass; id., at 857-59, 134 A.3d 219 ; in the present case, we observe that the trial court had already conducted a proper plea canvass before accepting the defendant's plea. The trial court's plea withdrawal hearing was in addition to that safeguard.
The plea withdrawal hearing yielded useful information: the defendant's true reason for seeking to withdraw the guilty plea was because he had changed his mind.[12] That reason is not among the grounds enumerated **842 in Practice Book § 39-27 for the withdrawal of a plea, and the court had no reason to inquire further, such as by way of an evidentiary hearing. See id., at 851, 860-61, 134 A.3d 219 (explaining that there is no "affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea," and that "trial courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion"). Thus, the trial court held a hearing on the defendant's motion and did not abuse its discretion in not conducting a further inquiry or evidentiary hearing. The Appellate Court improperly concluded otherwise.
II
The state's second claim is that the Appellate Court improperly concluded that the trial court failed to conduct a hearing on the defendant's request for new counsel. Alternatively, the state argues that the Appellate Court improperly concluded that the trial court was required to hold a hearing on the request. We conclude that, under the circumstances of this case, the trial court was not required to *1229 conduct a hearing on the request for new counsel.[13]
When reviewing the adequacy of a trial court's inquiries into a defendant's request for new counsel, an appellate court may reverse the trial court only for an abuse of discretion. See, e.g., State v. Arroyo , 284 Conn. 597, 644, 935 A.2d 975 (2007). "[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel .... The extent of that inquiry, however, lies within the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) Id. When a **843 defendant's assertions fall "short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney.... Moreover, the defendant's right to be represented by counsel does not grant a defendant an unlimited opportunity to obtain alternate counsel ...." (Citations omitted; internal quotation marks omitted). State v. Robinson , 227 Conn. 711, 725, 631 A.2d 288 (1993).
In the present case, the trial court did not abuse its discretion by failing to inquire into the defendant's complaints about his counsel because those complaints were not substantial. The defendant's numerous complaints about counsel fall into three general categories.
First, the defendant claimed that his attorney coerced him into pleading guilty. For example, the defendant's first letter contends that, "[h]ad my attorney investigated and told me all the facts I wouldn't have pled guilty to a charge that I didn't commit. I felt pressured to take the plea because I was told I had 'no chance' of winning [at] trial." This complaint is insubstantial. To begin with, the plea canvass contradicts it, as the trial court confirmed that the plea was voluntary and uncoerced, and that the defendant had been satisfied with his attorney's advice. Second, statements such as, "I felt pressured to take the plea because I was told [by counsel] I had 'no chance' of winning [at] trial," are not coercive, but rather amount to "an experienced lawyer's analysis of the evidence available to [a defendant] as against the state's evidence ...." LaReau v. Warden , 161 Conn. 303, 309, 288 A.2d 54 (1971). For example, in LaReau , we concluded that defense counsel's statements to the defendant that he "had no case" and "should change [his] plea to guilty," was advice, rather than coercive threats. (Internal quotation marks omitted.) Id. The trial court would have been justified in reaching that conclusion here.
**844 The defendant's second group of complaints in his first letter focuses largely on his counsel's trial strategy. For example, the defendant complained: "I need a new attorney and I need for him to request a '[m]otion to vacate' and a[n] 'evidentiary hearing,' " and "[m]y counsel also failed to file a 'motion to dismiss' the murder charges after the [Franklin] trial." Similarly, the defendant claimed in his second letter that his counsel "didn't put any motions in to try to get any hearings when I asked for some" and that his counsel "wants to wait until the last minute going against my wishes." These complaints are also insubstantial. "Differences of opinion over trial strategy are not unknown, and do not necessarily compel the appointment of new counsel." State v. Drakeford , 202 Conn. 75, 83, 519 A.2d 1194 (1987). That is especially true in the present case where *1230 the plea canvass already established that the defendant was satisfied with his attorney's performance.
The defendant's third group of complaints asserts ineffective assistance of counsel. In his first letter, the defendant wrote, "I am claiming ineffective counsel. I was not explained all elements of the crime of murder." In his second letter, the defendant explained that, "[w]hen I came to court I've told him [about my confusion regarding the underlying crime] personally and that I would like a new lawyer," and characterized this complaint as a matter of ineffective assistance. The defendant's conclusory allegations of ineffective assistance of counsel are an insubstantial complaint in the present case because the defendant confirmed during the plea canvass that he was satisfied with his attorney's advice, and he admitted during the plea withdrawal hearing that the true reason behind his dissatisfaction was a change of heart.
Indeed, the defendant's motion to withdraw his guilty plea and his request for new counsel are inextricably linked: both stem from the defendant's changing his **845 mind about his guilty plea after its acceptance by the trial court. This background further supports the conclusion that the defendant's assertions about counsel fell "short of a seemingly substantial complaint," and, therefore, the "trial court need not [have] inquired into the reasons underlying the defendant's dissatisfaction with his attorney." (Internal quotation marks omitted.) State v. Robinson , supra, 227 Conn. at 725, 631 A.2d 288. We are not persuaded, therefore, by the defendant's attempt to portray his critique of counsel as a "substantial complaint concerning a breakdown in the relationship between the defendant and his attorney." The trial court did not abuse its discretion by denying the defendant's request for new counsel without a hearing, and the Appellate Court improperly concluded that such a hearing was required.
III
The trial court held an adequate hearing on the defendant's motion to withdraw his guilty plea, after which no evidentiary hearing was necessary. Furthermore, no hearing was required in response to the defendant's request for new counsel. Accordingly, we disagree with the Appellate Court that the trial court abused its discretion in failing to hold (1) an evidentiary hearing on the defendant's motion to withdraw his guilty plea, and (2) a hearing or adequate inquiry on his request for new counsel.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.
In this opinion the other justices concurred.

We granted the state's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issues: (1) "Did the Appellate Court properly conclude that the trial court erred in failing to conduct a hearing on the defendant's motion to withdraw his plea?" (2) "Did the Appellate Court properly conclude that the trial court erred in failing to conduct a hearing on the defendant's request for new counsel?" State v. Simpson , 324 Conn. 904, 151 A.3d 1289 (2016).

North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970).

In addition, under a separate docket number, the defendant admitted that, by his criminal conduct, he had violated the terms of his probation.

"Under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial.... A guilty plea under the Alford doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. The entry of a guilty plea under the Alford doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) State v. Faraday , 268 Conn. 174, 204-205, 842 A.2d 567 (2004).

In a separate trial involving the James shooting, Franklin was convicted of "one count of murder in violation of ... § 53a-54a (a), one count of felony murder in violation of ... § 53a-54c, and one count of robbery or attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (1)." State v. Franklin , 162 Conn. App. 78, 81, 129 A.3d 770 (2015), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016).

The defendant further asserted that, by "failing to address the grievances that the defendant raised to the court concerning his attorney," the trial court violated his right to counsel. State v. Simpson , supra, 169 Conn. App. at 171, 150 A.3d 699. The Appellate Court did not reach the merits of that claim. Id., at 204 n.16, 150 A.3d 699. The defendant also claimed that the trial court "abused its discretion by accepting the plea and that its acceptance of the plea violated the defendant's right to due process." Id., at 171, 150 A.3d 699. The Appellate Court did not reach that issue. Id., at 200 n.14, 150 A.3d 699.

At oral argument, the state conceded the weakness of its argument that the trial court conducted a hearing on the request for new counsel.

The defendant argues at length that his plea was not knowing and voluntary, and that the record failed to refute his claim that it was not. We are not persuaded. First, to the extent that the defendant challenges the plea due to his alleged confusion regarding the distinction between culpability for murder as an accessory, as opposed to as a principal, we observe that "there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility.... The accessory statute merely provides alternate means by which a substantive crime may be committed." (Citations omitted; internal quotation marks omitted.) State v. Montanez , 277 Conn. 735, 755-56, 894 A.2d 928 (2006). Indeed, in the present case, the state set forth a factual basis for the plea that could have established the defendant's criminal responsibility as an accessory or as a principal, given that ballistic evidence indicated two shooters and the defendant admitted to being one of them. State v. Simpson , supra, 169 Conn. App. at 173-74, 150 A.3d 699. Thus, any confusion by the defendant over whether he was pleading guilty as an accessory or as a principal is irrelevant-the state's factual basis put him on notice of both theories, and there is no practical difference between them. Second, the defendant's argument that the plea was not knowing and voluntary and, therefore, required an evidentiary hearing, is incorrect. As we explain in part I of this opinion, the trial court held a hearing on the defendant's request to withdraw his plea and properly concluded that an evidentiary hearing was not warranted because the defendant's true reason for withdrawal was that he had simply changed his mind.

The defendant argues that "the [trial] court did not establish [the] defendant was even aware of defense counsel's motion" and that the defendant might not have understood this question. We are not persuaded by this speculation.

We interpret the trial court's question as referring to both the defendant's letters and his attorney's motion to withdraw the guilty plea. Therefore, we need not consider the defendant's arguments that the trial court should have entertained the letters because we conclude that it did so in the present case. Indeed, the trial court acknowledged receipt and review of the defendant's letters. Thus, we are not persuaded by the defendant's claim that the hearing was inadequate because the court focused on the motion filed by defense counsel, rather than the defendant's letters. By asking an open-ended question, the trial court afforded the defendant an opportunity to present all of his reasons for seeking to withdraw his guilty plea, not only those contained in his attorney's motion. Additionally, as we explain subsequently, the court's questions provided an ample opportunity for the defendant to explain his rationale for the plea withdrawal, including the reasons outlined in the letters.

The defendant attempts to distinguish State v. Anthony D. , supra, 320 Conn. at 860, 134 A.3d 219, from the present case because, in that case, "neither the defendant nor his attorney requested an evidentiary hearing ...." That distinction is not persuasive, however, because it was not the lack of a request for an evidentiary hearing that was determinative in Anthony D. but, rather, that the defendant failed to articulate "specific concerns or facts ... to justify the withdrawal of the defendant's guilty plea at sentencing ...." Id., at 862, 134 A.3d 219. The defendant's failure to request an evidentiary hearing was merely one consideration, among many, that this court considered in concluding that "the defendant was afforded a reasonable opportunity to satisfy his burden of presenting a factual basis in support of his motion to withdraw his guilty plea." Id., at 860, 134 A.3d 219.

The defendant paints the conclusion that he simply changed his mind as an issue of whether he abandoned the claims in his letters, an argument that mirrors the approach of the Appellate Court. State v. Simpson , supra, 169 Conn. App. at 199, 150 A.3d 699. We need not hold that there was abandonment because the trial court considered the defendant's claims, including those expressed in his letters, but rejected them as meritless.

It is unnecessary, therefore, for us to determine whether the trial court actually held a hearing on the request for new counsel.